OPINION
This matter presents a timely appeal from a judgment rendered by the Belmont County Common Pleas Court, wherein the trial court found plaintiff-appellant, John Matusic, guilty of three counts of assault on a peace officer, in violation of R.C. 2903.13 (A).
On January 6, 1996, a call was received by the Bridgeport police requesting that they order appellant to leave his girlfriend's home in Pease Township. Two officers told appellant to leave, and he complied. The next night at 3:47 a.m., Bridgeport Police Officers Caprita and Flanagan were informed by their dispatcher that a second call was received from the girlfriend's residence, complaining that someone was attempting to kick down the front door. On the way to the girlfriend's residence, the officers were told that another call had come in informing them that the intruder had gained entry.
When the officers arrived, they saw appellant on the front porch with blood on his head and face. Officer Caprita knocked on the door and interviewed appellant's girlfriend and her friend while Officer Flanagan questioned appellant. Appellant stated that the people in the house had beat him up when he came to get his belongings. Appellant then said that he was leaving. Although Officer Flanagan told appellant to wait until the situation was clarified, appellant said, "Fuck this, I'm leaving," and shouldered his way past the officer. Appellant continued departing after being told to stop. Officer Flanagan then grabbed appellant by the back of the collar and informed him that he was under arrest for disorderly conduct. Appellant turned around and grabbed Officer Flanagan. Officer Caprita tried to assist by placing appellant's arm in a wrist lock, but appellant jerked his arm free and punched Officer Flanagan in the side of the head. At this time, Martins Ferry Police Officers, Carpenter and Callarik, arrived as back up. They witnessed the blow that appellant delivered upon Officer Flanagan and ran to the porch to assist.
Officer Flanagan grabbed appellant's waist while Officer Caprita grabbed appellant's shoulder. Appellant then gripped onto the porch railing. Officers Carpenter and Callarik arrived on the porch and attempted to assist in loosening appellant's grip on the rail so that he could be handcuffed. When appellant's grip loosened, appellant and the four officers went tumbling down a flight of four wooden stairs, with appellant sliding down on his back. Appellant jumped up first and started swinging his fists about causing Officer Caprita to duck to avoid being punched. The officers rushed appellant and struggled with him. Then they all fell down a flight of eight concrete steps, with Officer Callarik landing on his knees.
During this time a witness was yelling from the porch that appellant had a knife. Appellant rushed Officer Callarik and grabbed onto his thighs. Because appellant's mouth was on the inside of Officer Callarik's thigh and appellant was growling, Officer Callarik started yelling that appellant was trying to bite him. To stop appellant, Officers Callarik and Flanagan delivered blows to appellant's shoulder area. Officer Caprita used a sap, a department issued tool used to repel attackers, on appellant's wrist and elbow. Appellant then kicked Officer Caprita in the shin causing him fall on top of appellant. This fall broke appellant's grip allowing him to be handcuffed.
Appellant was then placed in the Bridgeport police vehicle where he apologized and said that he was "crazy in love." Appellant begged the police officers not to put him in jail. Once in jail, appellant requested that he be taken to the hospital for his injuries. After arriving at the East Ohio Regional Hospital, appellant refused treatment as he thought the members of the fire department who transported him were harassing him. Upon returning to the jail, a staff doctor at the jail examined appellant and requested that he be admitted to Barnesville Hospital. Appellant stayed in the hospital for two days due to blood in his urine from a damaged kidney.
Appellant testified that he was not injured when the officers arrived at his girlfriend's house. Further, appellant stated that he never gained entry and was not beaten up by the people in the house. He surmised that his head injuries were caused by the fall down the stairs. Moreover, appellant claims that when Officer Flanagan grabbed his collar, he did not resist arrest but rather, he slipped on the ice causing him to grab onto the railing. He then said that the Martins Ferry officers pulled all the officers and appellant down the steps. Appellant stated that he did not punch, swing at, kick, or try to bite the officers. However, appellant said that he may have grabbed Officer's Callarik's legs because the other officers were beating him.
On February 7, 1996, appellant was indicted on three counts of assault in violation of R.C. 2903.13 (A). Pursuant to R.C.2903.13 (C) (3), appellant's offenses were increased from first degree misdemeanors to fourth-degree felonies as they were committed against peace officers in the line of duty. The three counts were for the three victims: Officer Flanagan who was allegedly punched in the head, Officer Callarik who was allegedly grabbed and almost bitten, and Officer Caprita who was allegedly kicked and almost punched.
Appellant requested a jury trial which began on August 15, 1996. On the morning of trial, appellant filed a motion asking for removal of his court-appointed counsel because such counsel did not subpoena his medical records or the staff doctor at the jail. The trial court denied appellant's motion as untimely and stated that appellant's counsel was competent. The trial proceeded, and on August 16, 1996, the jury returned guilty verdicts on all three counts. Appellant was sentenced to a definite term of eighteen months incarceration on each count with counts one and two to run consecutively and count three to run concurrently, for a total of thirty-six months. This appeal followed.
Appellant sets forth four assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE DEFENDANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden of proving : (1) that defense counsel's performance was deficient and (2) that said deficient performance prejudiced the defense. State v. Reynolds
(1998), 80 Ohio St.3d 670, 674, citing Strickland v. Washington
(1984), 466 U.S. 668, 687. A defense counsel's performance is deficient if it falls below an objective standard of reasonableness. Reynolds supra. The defendant must produce evidence that counsel acted unreasonably by substantially violating an essential duty that an attorney owes to a client.State v. Sallie (1998), 81 Ohio St.3d 673, 674; State v. Keith (1997), 79 Ohio St.3d 514, 534. Because attorneys are presumed competent, reviewing courts refrain from second-guessing strategical decisions and strongly presume that the performance in question falls within a wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558.
Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, supra at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that were it not for serious errors made, the outcome of the trial would have been different. Strickland, supra at 695-96. A reasonable probability is that which undermines one's confidence in the outcome of the trial. Strickland supra. See, also, State v.Bellish (Mar. 31, 1998), Mahoning App. No. 87-CA-78, unreported.
Appellant makes many allegations of ineffective assistance, the first of which complains that counsel failed to move for a separation of witnesses and as such, the four officers were present throughout the trial. Plaintiff-appellee, State of Ohio, did submit a correction of the record pursuant to App.R. 9 (E), which indicated that a separation motion was made and denied. Said correction was signed by the assistant prosecutor and appellant's trial counsel and dated after appellant's appellate brief was filed by new counsel.
App.R. 9 (E) requires that a record correction be performed by the trial court if the parties differ on what occurred at trial. The parties can correct the record by stipulation. However, appellant's original counsel no longer represented appellant. Thus, any stipulation to correct the record must be performed by appellant or his appellate counsel. Without a proper stipulation or a correction certified by the trial court, we must conclude that a motion for separation was not filed.
Therefore, appellant argues that defense counsel's failure to move for a separation of witnesses prejudiced his defense, because had the motion been made, it would have been granted as to three of the officers. Appellant contends that only one of the officers was permitted to remain in the courtroom as the state's representative. Thus, the other three officers would not have been able to listen to the testimony before them and conform their testimony to the prior officers' testimony. On the other hand, appellee argues that the officers were the victims and thereby were permitted to be present throughout the trial.
Pursuant to Evid.R. 615, a court must order separation of witnesses upon a party's motion. This rule does not apply to the following people: (1) a party, (2) an entity party's officer or employee who is designated as a representative by the party's attorney, or (3) a person whose presence is shown to be essential.
The staff note to Evid.R. 615 states that it is identical to the federal rule. However, on December 1, 1998, the United States Supreme Court added part (4) to the federal rule which allows witnesses to avoid a separation order if their presence is authorized by statute. This amendment is in response to Congress's 1990 enactment of the "Victims of Crime Bill of Rights," which gives victims the right to be present at all court proceedings unless the court determines that the victim's testimony would be materially affected by hearing the other trial testimony. Section 10606 (b) (4), Title 42, U.S. Code.
Notwithstanding the federal amendment, courts in Ohio have held that complaining witnesses are not considered parties under Evid. R. 615 (1). See, State v. McClain (Mar. 30, 1994), Vinton App. No. 482, unreported. There is no authority from the Ohio Supreme Court to the contrary.
Pursuant to Evid.R. 615 (2), the prosecutor may designate a law enforcement officer as a representative of the state who may sit throughout the entire trial without regard to a separation order. It is questionable though how many representatives the prosecutor may designate. According to United States v. Pulley (C.A.6, 1991), 922 F.2d 1283, the government may only designate one representative under Evid.R. 615 (2). Pulley also suggests that the government may have another police officer sit through the trial under Evid.R. 615 (3) as a person essential to the case. InUnited States v. Jackson (C.A.2, 1995), 60 F.3d 128, where three testifying federal agents were permitted to evade a separation order and sit through the trial, the court held that more than one officer can evade a separation order for being essential to the case under Evid.R. 615 (3) although such a situation is rare. The Jackson court went on to hold that the presence of the three agents was not essential to the government's case. However, the Jackson court did not find this error to be prejudicial.
Utilizing the above propositions, we hold that the alleged failure of defense counsel to move for a separation of witnesses was not so prejudicial as to warrant a new trial. Had the motion been made, the trial court may have granted the motion as to three of the officers allowing one to remain as appellee's representative pursuant to Evid.R. 615 (2). However, it is also possible that the court would have exercised its discretion under Evid.R. 615 (3) and permitted another officer to remain as essential to the presentation of appellee's case. Thus, two officers could have properly been present through the entire trial, one as a representative and one as essential to appellee's case. See, also, State v. Lapping (1991), 75 Ohio App.3d 354, 363
(allowing two humane society officers to represent the state in a prosecution for cruelty to animals). A third officer could have testified first. This officer would then be permitted to remain in the courtroom as his testimony would no longer be susceptible to influence. Thus, only a fourth officer may have been excluded pursuant to a separation order. The fourth officer who was not separated could have tailored his testimony to conform to the prior officers' testimony, however, in light of the mutually corroborating testimony of the other three officers who were properly present, we hold that the presence of the fourth officer throughout the trial was not so prejudicial as to undermine our confidence in appellant's conviction. Thus, appellant's argument in this regard is not well-taken.
Appellant's next contention of ineffective assistance of counsel is that defense counsel failed to object when appropriate. Appellant quotes twenty-one different passages of testimony that he believes were objectionable. We will only address those passages for which appellant sets forth support for his allegation of prejudice; appellant cannot merely list potential problem areas and then ask this court to construct arguments for his areas of concern.
First, appellant complains about the admission into evidence of letters received by the Bridgeport police officers from the Department of Justice which stated that the civil rights investigation was closed. We will reserve our discussion of these letters until appellant's third assignment of error which alleges prejudicial impact to the defense from these letters.
Next, appellant alleges that his attorney should have asked him on the stand whether he ever smoked crack cocaine. He contends that such a question was necessary in light of Officer Flanagan's testimony that the police asked appellant if he were smoking rock cocaine, to which appellant responded that he "just got out of rehab." (Tr. 54). Appellant argues that he may not have been undergoing rehabilitation for a crack problem. This issue involves a trial tactic which we will not second-guess on review. See Carter, supra at 558. Furthermore, defense counsel asked appellant if he were high on any drug at the time of the incident, and appellant responded that he was not. That defense counsel did not ask the exact question that appellant desired is harmless.
Appellant then contends that defense counsel should have objected to the officers' testimony that a witness was yelling that appellant had a knife. This statement was not hearsay as it was not offered to prove the truth of the matter asserted, that appellant had a knife. Rather, the statement was offered to show why the officers acted as they did, why they were so worried about getting appellant in handcuffs and away from Officer Callarik's legs. Further, it could also be admitted as an excited utterance under Evid.R. 803 (2) since the witness was under the stress of seeing police officers struggle with an individual carrying a knife.
Appellant goes on to complain that defense counsel should have objected to the prosecutor's statements that appellant was an ex-boyfriend and that the witness present at the time of the incident, was his girlfriend's new boyfriend. Appellant claims that he was prejudiced by the inference that he was a jilted lover when in fact his girlfriend testified that appellant was her boyfriend at the time of the incident. (Tr. 173). However, his girlfriend also testified that she and appellant were having relationship troubles at the time. Regardless, the prosecutor's characterizations were not so prejudicial to appellant that defense counsel's failure to object to them constituted ineffective assistance of counsel. Appellant's relationship status did not contribute to the verdict.
Appellant next claims that defense counsel should have objected to the prosecutor's alleged leading question, "Now, at this point, once you put him in the jail cell and close it, he realizes that the lenience — that he's not getting lenienc[y]?" (Tr. 55). After reading Officer Flanagan's testimony which immediately preceded this question it is obvious that the prosecutor's question is solely a reiteration of Officer Flanagan's prior statement. No prejudice is apparent.
Appellant also argues that defense counsel should have objected to the prosecutor's continued reference to his teeth being on Officer Callarik's thigh when it was only appellant's mouth on the officer's thigh. Defense counsel may not have objected to the prosecutor's misstatements, but he did clarify the matter on cross-examination. (Tr. 123). Moreover, Officer Callarik corrected the prosecutor's misstatement. (Tr. 120)
Lastly, appellant argues that defense counsel should have objected when the prosecutor asked appellant if he referred to the officers as "slime" when he saw them at lunch. Even if this were an objectionable question, it is not outcome-determinative. Therefore, appellant's arguments in this regard are not well-taken.
Appellant's third contention of ineffective assistance of counsel alleges that defense counsel was ineffective by revealing his intent to file a civil suit against the police officers and stating, "So keep in mind that there may be biases on both sides of this case." (Tr. 22). Defense counsel may have thought that the fact that appellant was contemplating a civil suit made his claims of brutality more credible. Moreover, defense counsel may have used the civil suit to demonstrate a motive to lie on the part of the officers. As aforementioned, we will not second-guess trial strategy or trial tactics. Therefore, appellant's arguments in this regard are not well-taken.
Appellant further argues that defense counsel should have objected to the jury's receipt of physical evidence since appellee failed to offer the exhibits into evidence. Appellant specifically points to the prejudice which he suffered as a result of the metal "crack pipe" and the sap being given to the jury.
The record lacks an offer of the exhibits into evidence. However, after closing arguments, the trial court said to the attorneys, "I want you to check the exhibits." (Tr. 206). The trial court then said to the jurors that the bailiff would bring them the exhibits soon. The jurors began deliberations. Later, they entered the courtroom to ask the court for a lunch break. At that time, the prosecutor said, "Judge, at the close of yesterday's proceedings, we didn't introduce 9 into the record." The trial court responded, "Well, it won't go in, then." (Tr. 207)
Appellant contends that if defense counsel would have informed the trial court that none of the exhibits were introduced into the record, then such exhibits would have been precluded. The lack of proper authentication of evidence warrants exclusion.Wooster Products, Inc. v. Magnatek Inc. (Apr. 25, 1990), Wayne App. No. 2462, unreported. Defense counsel's failure to raise such point at trial does show an error, however, such error was harmless. The Ohio Supreme Court in State v. Woodward (1993),68 Ohio St.3d 70, held that when an admission of exhibits is not prejudicial admission is harmless. Because defense counsel's performance, when examined in its totality, was not deficient, it cannot be said that this error prejudiced the defense.
Appellant next argues that defense counsel was ineffective because he failed to ask that the jury be instructed on self-defense. However, appellant presented the defense that he never fought back with the officers. Therefore, self-defense would basically contradict appellant's own testimony that he slipped and that he did not attempt to punch, kick, bite, or tackle any of the officers. Therefore, deficient performance by defense counsel is not evident in this regard.
Appellant further alleges that defense counsel should have filed a request to have the jury instructed on the offense of resisting arrest. In opening statements, appellant's counsel stated:
 "[H]e did turn to walk away from the police officers and one of them grabbed him on the back of the shirt, we'll hear testimony about that. And he did pull away and if anything that might be a resisting arrest, but it's certainly no assault.
 "He did resist their putting cuffs on him. Again, that may be resisting arrest, but it's no assault." (Tr. 23).
Appellant was originally arrested for assault, disorderly conduct, and resisting arrest. He was then indicted for three counts of assault on a peace officer. It is unclear from the record what happened to the charges of disorderly conduct and resisting arrest. Nonetheless, in this trial, appellant's charges did not include resisting arrest but only assault upon a peace officer.
One offense is a lesser-included offense of another offense if: (1) it has a lesser penalty than the other offense; (2) the greater offense cannot ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205; State v.Wilkins (1980), 64 Ohio St.2d 382, 384. When comparing resisting arrest and assault on a peace officer, it is clear that assault or assault upon a peace officer can be committed without committing resisting arrest. Therefore, resisting arrest is not a lesser-included offense of assault upon a peace officer.
In light of the facts in this case, the instruction on assault upon a peace officer was warranted, while an instruction on resisting arrest was not. Appellant's arguments in this regard are not well-taken.
Appellant also contends that defense counsel should have requested that the jury be instructed on the offense of disorderly conduct as a lesser-included offense of assault. Minor misdemeanor disorderly conduct is a lesser-included offense of assault. State v. Reynolds (1985), 25 Ohio App.3d 59, 60-61;State v. Roberts (1982), 7 Ohio App.3d 253, 254. Nevertheless, a defendant is not automatically entitled to an instruction on a lesser-included offense. State v. Kidder (1987), 32 Ohio St.3d 279,280. A defendant is only entitled to such an instruction if the evidence reasonably supports an acquittal on the greater offense and a conviction on the lesser offense. Kidder, supra;State v. Thomas (1988), 40 Ohio St.3d 213, 216.
In the case at bar, appellant testified that the officer must have construed his slip on the ice to be an attempt to resist the arrest. Appellant stated that he did not act violently or hit or attempt to injure anyone. In State v. Johnson (1988), 36 Ohio St.3d 224, the Ohio Supreme Court held that a defendant is not entitled to an instruction on a lesser-included offense if he denies participation in any wrongdoing. Analogously, since appellant denies he did anything wrong and claims that the only fighting or violence that happened in this matter was at the hands of the officers, he is not entitled to an instruction on disorderly conduct. See, also, State v. Shane (1992), 63 Ohio St.3d 630,633 (stating that more than "some evidence" in support of the lesser-included offense is needed). Moreover, the Ohio Supreme Court has held that failure to request a lesser-included offense instruction is trial strategy and does not establish ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48. Accordingly, appellant's arguments in this regard are not well-taken.
Appellant next argues that the subpoena for a key witness was issued too late and that defense counsel should have requested assistance from the trial court after realizing that the witness was not going to appear. The witness in question was subpoenaed by the defense on August 12, 1996, three days before the trial; however, such witness did not appear for trial. We cannot say that issuing a subpoena three days before trial is unreasonable. Further, the witness's absence was not attributable to defense counsel.
Appellant also contends that defense counsel should have objected to the hearsay contained in the witness's call to the police dispatcher. However, an extrajudicial statement may be offered to explain a police officer's subsequent investigatory conduct during the course of a criminal investigation. State v.Thomas (1980), 61 Ohio St.2d 223, 232. See, also,State v. Lucas (Aug. 29, 1996), Jefferson App. No. 96-JE-35, unreported. The content of the dispatcher's call to the officers was relevant and probative on the issue of the officer's state of mind upon arrival at the scene and the issue of the officer's justification for wanting to detain appellant. Therefore, appellant's arguments in this regard are not well-taken.
Finally, appellant complains that defense counsel should have subpoenaed either his medical records or the doctor at the jail because he suggests that such evidence would tend to show that he was not on crack and that he sustained injuries attributable to police brutality. Nonetheless, defense counsel's decisions on which witnesses to call fall within the realm of trial strategy and will not usually constitute ineffective assistance of counsel. Clayton, supra at 49. As explained in Carter, supra at 558:
 "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (See, also, Sallie, supra.)
Using this standard, defense counsel may have strategically reasoned that appellant's medical records and the testimony of the doctor would point more favorably toward the appellee. The doctor may have testified that appellant's back injuries were of the type that could be caused by falling down twelve steps. As there is no evidence before this court that the medical evidence would have worked to appellant's advantage, we cannot say that defense counsel's failure to utilize such evidence was outside the wide range of reasonable professional assistance. See Statev. Thompson (1987), 33 Ohio St.3d 1, 10.
Thus, appellant's first assignment is found to be without merit.
Appellant's second assignment of error provides:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT EFFECTIVELY PRESERVING FOR APPELLATE REVIEW THE DEFENDANT'S REQUEST FOR REMOVAL OF COUNSEL AND BY NOT SUFFICIENTLY INQUIRING, PRIOR TO THE COMMENCEMENT OF TRIAL, AS TO WHETHER OR NOT THE DEFENDANT HAD EFFECTIVE ASSISTANCE OF COUNSEL."
On the morning of trial, appellant filed a letter in the clerk of court's office which stated:
 "I John Matusic am replacing my appointed concil (sic) of David Trouten on not doing said items
"1) subenoed (sic) Dr. Phillips, medical records
 "2) Did not get important evidince (sic) untill (sic) 2 hours from court date
 "3) not wanting to represent to the fullest or my best interests"
Before trial, the trial court addressed appellant's letter. As to the subpoenaing of the doctor, the trial court asked appellant what the doctor would add to the case. (Tr. 6). Appellant replied that he wanted to establish that the police were the ones who had perpetrated an assault against him. (Tr. 7). The trial court found that defense counsel still had time to subpoena the doctor or the medical records. (Tr. 7). Further, the trial court added that defense counsel was a competent attorney. (Tr. 8).
As to the allegation that defense counsel did not get important evidence until two hours before trial, the following transpired:
 "THE COURT: * * * You say you didn't get important evidence the minutes from Northern Division, pictures.
"THE DEFENDANT: I mean. I requested —
"THE COURT: Well, if he's got it, he's got it, right?
"THE DEFENDANT: Yes, sir." (Tr. 7).
The pictures purportedly refer to the photographs taken by the Belmont County Sheriff's Department of appellant's injuries. These pictures were introduced by appellee as exhibits. (Tr. 91-92)
Appellant argues that the trial court's inquiry into his request for removal of defense counsel was not fully addressed as required by case law. However, appellant only focuses on defense counsel's inadequacy due to his failure to subpoena appellant's medical records or the doctor.
In State v. Deal (1969), 17 Ohio St.2d 17, the Ohio Supreme Court held that where an indigent defendant questions his attorney's effectiveness during trial by listing a specific allegation, it is the duty of the trial court to adequately investigate the complaint on the record. However, a trial court's inquiry may be brief and minimal. State v. King (1995), 104 Ohio App.3d 434,437; State v. Prater (1990), 71 Ohio App.3d 78, 83.
In the present case, appellant presented the trial court with a specific allegation of ineffective assistance of counsel before the trial began. Thereafter, the trial court properly asked appellant what the desired evidence or testimony would show and made an appropriate inquiry into appellant's allegations. The trial court effectively preserved for appellate review appellant's request for removal of defense counsel. The refusal to replace defense counsel is not an abuse of discretion when the accused makes the request at the last minute prior to the trial and adequate reasons for the request are not set out in the record. State v. Harper (1988), 47 Ohio App.3d 109, 113. Appellant's request was filed the morning of the trial. As such it was clearly a last minute attempt to delay the trial. Therefore, the trial court did not commit prejudicial error by overruling appellant's request for removal of his defense counsel.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING AND/OR ENCOURAGING THE INTRODUCTION OF AN FBI REPORT EXONERATING THE CONDUCT OF THE POLICE OFFICERS."
While cross-examining Officer Flanagan, defense counsel asked:
 "Q. Did you know that — Did Mr. Matusic ever tell you that he would be filing a civil action against any of the officers involved here?
 "A. Yes, in fact in Northern Division Court, I believe he was making some kind of plea and he told Judge Solovan that he would plead guilty if this wouldn't hurt his civil case. The FBI." (Tr. 68).
"MR TROUTEN: Objection, Your Honor.
"THE COURT: No, you asked the question. Answer it.
 "A: After the civil thing that was brought up, the FBI was called in and we were investigated by the FBI." (Tr. 68).
On redirect, the prosecutor asked:
 "Q: Now, also the civil action that Mr. Trouten had brought up, you said you were investigated by the FBI concerning allegations that were made by the defendant. Did you ever receive a report?
 "A. Yes, sir, I got a report from the FBI, the Department of Justice, Washington, D.C.
"Q: And did that report have findings on it?
"A: Yes, sir, it did.
"Q: And what did those findings conclude?
 "A: I don't know the exact words; you have the letter there. But it states that he alleged —
"THE COURT: Wait a minute. You got a letter there?
"[THE PROSECUTOR]: I do, Your Honor.
"THE COURT: Let's get the exact words in." (Tr. 69-70)
Officer Flanagan then read the letter which stated:
 "Dear Mr. Flanagan, the Civil Rights Division, Department of Justice recently completed its review of an investigation as reported by the Federal Bureau of Investigation. This matter concerning (sic) allegations that you were involved in a criminal violation of civil rights statutes regarding the deviations of civil rights of John George Matusic. After a careful review of the investigative reports in this matter, and based upon information currently available to this department, we have concluded that this matter should be closed and that no further action is warranted." (Tr. 71).
When Officer Caprita testified, he read a similar letter addressed to him. (Tr. 111). The officers testified that they chose to be interviewed by the F.B.I. instead of solely standing by their initial reports of the incident. (Tr. 72)
Appellant complains that defense counsel rendered ineffective assistance by asking Officer Flanagan if he knew that appellant was contemplating a civil suit. Evid.R. 616 states that bias, prejudice, interest, or motive may be shown to impeach a witness on examination or by extrinsic evidence. Defense counsel's performance in mentioning the civil suit was not deficient as it was simply a strategical means to show bias on the part of the officers.
Appellant also argues that the trial court should have sustained defense counsel's objection to Officer Flanagan's testimony about the Justice Department letter because the officer's answer went beyond the scope of counsel's question. Defense counsel did not specify the reason for his objection; however, the trial court had previously advised, "If you object, I don't want to hear your reason. If I don't understand why you're objecting to the question, I'll ask you * * *." (Tr. 8-9).
Appellant claims that the introduction of the letter from the Justice Department was prejudicial because the jury was informed that a superior agency had fully investigated the matter and cleared the officers of any wrongdoing. Evid.R. 403 (A) makes the exclusion of relevant evidence mandatory if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Because the trial court has broad discretion to balance probativeness against prejudicial effect, a reviewing court should not interfere absent a clear abuse of discretion. State v. Allen (1995), 73 Ohio St.3d 626.
In State v. Lentz (Mar. 29, 1996), Erie App. No. E-95-005, unreported, the Sixth District Court of Appeals held that F.B.I. letters could be excluded as hearsay and thus could be prejudicial. In the case at bar, the F.B.I. letter gave the jury the impression that appellant's claims had already been investigated and found to be without merit, thus the jury could wrongly assume, without weighing the evidence on their own, that appellant's defense was without merit. As a result, the probative value of the letter from the F.B.I. was substantially outweighed by its prejudicial effect to appellant. Thus, appellant's third assignment of error is found to have merit.
Appellant's fourth assignment of error alleges:
 "THE VERDICT OF GUILTY TO COUNT (1) OF THE INDICTMENT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
Appellant contends that appellee presented insufficient evidence to support his conviction of assault upon Officer Callarik. Whether appellee's evidence was sufficient is a question of law dealing with adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. The reviewing court must determine if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Goff (1998), 82 Ohio St.3d 123, 128, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Pursuant to R.C. 2903.13 (A) (C) (3), the essential elements of assault upon a peace officer are: knowingly causing or attempting to cause physical harm to a peace officer who is performing official duties. Officer Callarik testified that after everyone fell down the last flight of eight steps, he ended up on his knees. Additionally, the following colloquy took place at trial:
 "A: * * * When I was on my knees, he like come at me, put his arms around my legs like this, locked his hands and buried his face on my inner thigh, right here.
"Q: Now, was he biting your inner thigh?
 "A: I felt like his mouth on my leg and to me, he was trying to bit bit[e] me. I was trying to push his head down, he kept bringing it up. I wasn't getting no leverage due to the weather conditions.
"Q: Either way, he had his teeth in your thigh?
 "A: He had his mouth on my thigh. He was growling, also."
"* * *
 "A: Yes, when his mouth was on there, when I was pushing it down I said, "I think he's trying to bite me. He's trying to bite me. Get him off of me.'" (Tr. 119-20)
Officer Callarik thought appellant was trying to bite his inner thigh. Officers Flanagan, Caprita, and Carpenter testified that they saw appellant charge Officer Callarik and lock his hands around Officer Callarik's knees. They also heard Officer Callarik screaming that appellant was trying to bite him. (Tr. 46, 84, 131). Appellant testified that he may have grabbed Officer Callarik's legs while he was being beaten but that he did not try to bite the officer. (Tr. 154-55). Appellant now argues that if he wanted to bite Officer Callarik he would not have failed in his attempt since his mouth was allegedly on Officer Callarik's inner thigh.
Credibility of the witnesses is primarily a question for the fact-finder. State v. DeHass (1967), 10 Ohio St.2d 230. The jury occupied the best position to determine whether appellant's testimony was credible; they were able to view appellant's demeanor, voice inflections, and gestures. The jury could reasonably have found that appellant was not a believable witness and that Officer Callarik's fear that appellant was trying to bite him was warranted. After viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier-off act could have found that the elements of knowingly attempting to cause physical harm to Officer Callarik were proven beyond a reasonable doubt. Appellant's fourth assignment of error is found to be without merit.
The judgment of the trial court is reversed and this cause is remanded for further proceedings according to law and consistent with this opinion.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE