**The STATE of Ohio, Appellee,**

**v.**

**LAPPING, Appellant.**

[Cite as *State v. Lapping* (1991), 75 Ohio App.3d 354.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4465.

Decided Dec. 9, 1991.

*Martin DeMatteis,* for appellee.

*Michael A. Ognibene,* for appellant.

---

Joseph E. Mahoney, Presiding Judge.

Appellant, Arthur G. Lapping, purchased farmland in Southington Township, Trumbull County, Ohio, in the summer of 1988 with the intent of raising cattle. Appellant was an osteopathic physician by profession and knew little about the cattle business. Consequently, he contacted a cattle dealer, Larry Nosse, who sold him twenty-eight head of beef cattle over a period of six months beginning in October 1988 and ending in April 1989.

In March 1990, the Trumbull County Sheriff's Department received information that a dead cow was floating in a pond on appellant's property. A search warrant was issued, and on March 27, 1990, Trumbull County humane officers entered upon appellant's property to check on the condition of the cattle. The officers found a dead cow floating in the pond and another dead cow next to the barn. Most of the cows were in a pasture behind the barn to which the cows had no access. There was no hay in the pasture and the grass was short and sparse. A mother cow and her newborn calf were in the barn where they had access to food and water. The humane officers believed that all of the animals looked relatively thin.

All of the animals were confiscated and taken to a volunteer's barn where they received food, water, and medical treatment. Various veterinarians and experienced cattlemen examined the herd on behalf of the humane officers.

On April 3, 1990, appellant was charged with thirty counts of cruelty to animals pursuant to R.C. 959.13. On April 17, 1990, appellant filed a request for a bill of particulars. Said request was apparently denied by the trial court, although there is no evidence of any action taken on the request in the records from the trial court.

On August 7, 1990, this matter proceeded to a jury trial in the Newton Falls Municipal Court. Pursuant to a motion, one of the counts was dismissed, leaving twenty-nine counts that went to the jury. On August 16, 1990, appellant was found guilty on twenty-eight counts of animal cruelty. On August 28, 1990, the trial court denied appellant's motion to treat the twenty-eight counts as allied offenses under R.C. 2941.25.

Appellant was sentenced on each of the twenty-eight counts to ninety days in jail and fined $750 plus costs. Seventy days of jail time and $350 of the fine as to each count were suspended, and the sentences were to be served concurrently. The confiscated cattle were ordered to be sold at public auction with the proceeds to be applied to pay the expenses incurred with regard to

the care of the cattle from the time they were seized, then to any unpaid fines and costs and, finally, any balance returned to appellant.

Appellant timely filed a notice of appeal with the following assignments of error:

"1. The trial court erred to the prejudice of defendant appellant in instructing that animal cruelty R.C. 959.13 is a strict liability crime not requiring a showing of intentional or reckless activity.

"2. The trial court erred to the prejudice of defendant-appellant in failing to order the state to submit a bill of particulars, with respect to the complaint, which failed to put the defendant adequately on notice as to the charges against him.

"3. The trial court erred to the prejudice of defendant in overruling motions for acquittal made at the close of the state's case and at the close of all evidence.

"4. Misconduct by the State and the trial court's refusal to order a mistrial denied the defendant a fair trial.

"5. The trial court erred to the prejudice of the defendant in denying his motion to exclude two humane officers who testified as witnesses.

"6. The trial court erred to the prejudice of the defendant in refusing to merge the twenty-eight counts into one pursuant to R.C. 2941.25(A).

"7. The trial court erred to the prejudice of the defendant in imposing sentence of a substantial fine, forfeiture of property, and a jail term."

In the first assignment of error, appellant contends that the trial court erred in instructing the jury that cruelty to animals pursuant to R.C. 959.13 is a strict liability crime.

R.C. 959.13 provides:

"(A) No person shall:

"(1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;

"(2) Impound or confine an animal without affording it, during such confinement, access to shelter from wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the animals would otherwise become sick or in some other way suffer.  * * * "

The state alleges that R.C. 959.13 does not specify any degree of culpability. In such a situation, R.C. 2901.21(B) becomes relevant in that it provides:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

In the case *sub judice,* the trial court instructed the jury as follows:

" * * * Under Section 959.13 A1, the State must further prove beyond a reasonable doubt either that the Defendant deprived the animal of sustenance, impounded or confined the animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water. This Section 959.13 does not require for a finding of guilt that the State prove that the Defendant knowingly or recklessly violated his prohibition, only that he did so or under Section 959.13 A2 * * *."

Appellant objected to this instruction, but said objection was overruled by the trial court based on this court's decision in *State v. Cheraso* (1988), 43 Ohio App.3d 221, 223, 540 N.E.2d 326, 328–329, wherein we held:

" * * * [W]hen a statute reads, 'No person shall * * *,' absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability. * * * "

The *Cheraso* case involved the statute forbidding sale of liquor to minors. However, in a more recent case from this district that involved the cruelty to animals statute, this court specifically stated that the requisite *mens rea* to sustain a conviction pursuant to R.C. 959.13(A)(1) is recklessness. *State v. Davis* (July 28, 1989), Ashtabula App. No. 88–A–1391, unreported, 1989 WL 85683. Our decision in that case is in accord with other Ohio appellate courts. See *State v. Bravard* (Oct. 6, 1986), Warren App. No. CA85–12–093, unreported, 1986 WL 11239; *State v. Narramore* (Oct. 24, 1985), Cuyahoga App. No. 49502, unreported, 1985 WL 8497; and *State v. Hafle* (1977), 52 Ohio App.2d 9, 6 O.O.3d 5, 367 N.E.2d 1226. However, see *State v. Cuiksa* (Jan. 17, 1985), Belmont App. No. 84–B–5, unreported, 1985 WL 10366, wherein the Seventh District Court of Appeals reached the opposite conclusion.

The instant cause differs from the aforementioned cases, however, in one respect: those cases all involved manifest weight of the evidence questions rather than the question of an improper jury instruction. In those cases, the appellate courts upheld the convictions from the trial courts after reviewing all of the evidence and determining that there was sufficient evidence to find that the defendants had acted recklessly. We do not know whether the jury was correctly charged in those cases. In the present case, appellant specifically assigns as error the trial court's jury instruction. Therefore, this court

must address the propriety of the jury instruction and reverse if it was an incorrect statement of the law.

Based on principles of *stare decisis,* we will follow our previous decision on this issue wherein we stated that R.C. 959.13 is not a strict liability statute. Therefore, the trial court's instruction to the jury that cruelty to animals was a strict liability offense was erroneous.

Appellant's first assignment of error is well taken.

■ In the second assignment of error, appellant asserts that the trial court erred in failing to order the state to submit a bill of particulars as had been requested by appellant.

Crim.R. 7(E) provides:

"When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires."

Pursuant to that rule, appellant timely filed a request for a bill of particulars. Upon motion of the state, appellant's request was denied. It is appellant's claim that he was denied the opportunity to prepare an adequate defense because he did not know exactly which animals were allegedly mistreated, or the time frame of the alleged mistreatment.

It is clear, however, that the complaint was sufficient to put appellant on notice of the charges against him. The complaint stated that appellant:

" * * * on or about March 27, 1990, did deprive 30 beef type cattle of sustenance, did impound or confine 30 beef type cattle without supplying them during such confinement with a sufficient quantity of good wholesome food and water, did impound or confine 30 beef type cattle without affording them during such confinement, access to shelter from wind, rain, snow or excessive direct sunlight if it can reasonably be expected that the animals would otherwise become sick or in some other way suffer in violation of 30 counts of CRUELTY TO ANIMALS 959.13."

Being cruel to animals in violation of R.C. 959.13, as alleged herein, is not something that can be achieved at a single point in time. Malnutrition and dehydration occur over a period of time. It is obvious that appellant was in a better position than the state to know over what time period the animals were allegedly abused. The animals were purchased in late 1988 and early 1989, and were confiscated in early 1990. The alleged mistreatment must have occurred during that time period.

In *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 551 N.E.2d 1261, the Ohio Supreme Court held that a trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars:

" * * * whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense. * * * " *Id.* at 239, 551 N.E.2d at 1262.

If both questions are answered in the affirmative, then the state must supply said information.

In the instant cause, it is clear that the state did not possess the specific information requested by appellant. Therefore, the trial court did not err in denying appellant's request for a bill of particulars.

Appellant's second assignment of error is overruled.

■ In the third assignment of error, appellant claims that the trial court erred in overruling his motions for acquittal made at the close of the state's case and at the close of all evidence.

Specifically, appellant contends that the state presented no evidence that the cattle were without shelter when there was wind, rain, snow, or excessive sunlight. Regarding sustenance, appellant argues that the state proved nothing beyond the fact that the cattle were thin. The state failed to exclude parasites as a cause for the animals' thinness. Finally, appellant maintains that he was convicted of cruelty to the mother cow and calf despite the fact that, at the time of the raid, they were found sheltered in the barn with access to grain and water.

Crim.R. 29(A) provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

Appellant relies on *State v. Sorgee* (1978), 54 Ohio St.2d 464, 8 O.O.3d 452, 377 N.E.2d 782, for the proposition that, when circumstantial evidence is relied upon to prove an offense, such evidence must be consistent only with a theory of guilt and irreconcilable with any reasonable theory of innocence. The Ohio Supreme Court, however, has since reversed its position and recently held:

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential

element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required. * * * " *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus.

In the present case, it is clear that there was sufficient evidence to sustain a conviction. Employees of the humane society, cattle experts, and veterinarians testified on behalf of the state. Their descriptions of the conditions in which the cattle were found were nearly identical. Other than the mother cow and her calf, all of the other cattle were confined to a pasture which was little more than mud. There was no supplemental food source within the pasture and no access to water. The animals were subject to all the elements of nature as there was no shelter available to them.

It is undisputed that two of the cows were dead when the authorities arrived, and a third cow died a short time later.

Further, all of the state's witnesses described the remaining cattle, including the mother cow and her calf, as being extremely thin. They were said to be nothing more than skin stretched over bones, with ribs and spines very noticeable. They had poor coats, no energy, sunken eyes, and they staggered and swayed. The witnesses all agreed that the cattle were emaciated and malnourished.

Clearly, it would have been extremely difficult, if not impossible, for the state to prove exactly when the cattle were denied shelter or when they were not properly fed. It was not difficult, however, to show through circumstantial evidence that the animals had been mistreated.

Based on the foregoing, the trial court did not err in determining that there was sufficient evidence to allow the question to go to the jury and for the jury to make a finding of guilty. Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant contends that the trial court erred in refusing to order a mistrial in light of the state's misconduct. Specifically, appellant points to four instances in which he was prejudiced by the prosecutor's misconduct.

First, appellant claims that the state's failure to provide discovery until the middle of the trial denied him the right to a fair trial. In *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, the court stated that when a defendant raises a claim that the prosecutor failed to disclose exculpatory evidence relevant to the defendant's defense, "the prosecutor will

not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 108, 96 S.Ct. at 2400, 49 L.Ed.2d at 352. See, also, *United States v. Bagley* (1985), 473 U.S. 667, 675–676, 105 S.Ct. 3375, 3379–3380, 87 L.Ed.2d 481, 489–490.

Additionally, under the discovery rules in Ohio as set forth in Crim.R. 16, the options of the trial court when a party has failed to comply are as follows:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(E)(3).

In the present case, appellant asserts that Dennis Wildman, a nutritional expert, and Lisa Darling, D.V.M., had provided reports to the prosecutor which appellant was not aware of until each of those witnesses testified at trial. It is clear, however, that after objections had been raised by appellant during trial, the trial court, without determining one way or the other whether the reports were discoverable, allowed appellant ample opportunity to continue the trial, recall any witnesses, and otherwise review the documents in their entirety.

Appellant has failed to show that the trial court abused its discretion or that he was denied his right to a fair trial.

■ Appellant's second claimed incident by which he alleges to have been prejudiced was a series of misstatements made by the prosecutor during his opening statement.

The Ohio Supreme Court has held:

"In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. * * *" *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 793.

In the instant cause, it is important to note that appellant did not object to any of the statements made by the prosecutor during his opening statement. Moreover, the trial court properly instructed the jury that opening and closing statements, and other arguments by counsel, are not evidence and should not be so regarded. Given the proper instruction, and in light of the relatively minor misstatements made by the prosecutor during his opening statement, this court is unable to conclude that plain error occurred or that appellant was denied a fair trial.

■ The third instance of alleged misconduct occurred during the prosecutor's closing argument. Appellant claims that the prosecutor put forth his own personal opinion as to the credibility of a witness. The prosecutor stated:

"The Defendant put on a few witnesses and I have a problem with some of their testimony. Laurie Lombardo, of course, is a girlfriend of Arthur Lapping and I've got a problem with the video taken by her. There is never a date on the video and they seem a little rehearsed to me and I don't know if you picked that up or not. Give it whatever weight you want, but consider the fact that she is an associate with Arthur Lapping. * * * "

Again, appellant did not object to the preceding statement. Under such circumstances, the Ohio Supreme Court has held:

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

This court fails to find plain error in the prosecutor's remarks.

Finally, appellant argues that the prosecutor wrongfully made reference to a witness' previous unrelated misdemeanor conviction for the purpose of impeaching that witness. Defense counsel objected and the objection was sustained by the trial court.

Based on the record as a whole, it is clear that appellant received a fair trial and was not prejudiced by the prosecutor's conduct.

Appellant's fourth assignment of error is overruled.

■ In the fifth assignment of error, appellant contends that the trial court erred in denying his motion to exclude the two humane officers from the courtroom until they were called as witnesses.

Evid.R. 615 provides:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

Pursuant to section (2) of that rule, the trial court determined that the humane officers were employees of a party which is not a natural person and, as such, were entitled to remain in the courtroom. Appellant has failed to show that the trial court was in error.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant maintains that the trial court erred in refusing to merge the twenty-eight counts into one count pursuant to R.C. 2941.25, which provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The issue of allied offenses was addressed by the Ohio Supreme Court in *State v. Jones* (1985), 18 Ohio St.3d 116, 18 OBR 148, 480 N.E.2d 408. In that case, the defendant was charged with two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A), resulting from the deaths of two passengers in his vehicle. The defendant's argument that convictions on both counts amounted to a constitutional violation was rejected. The court found that the defendant's conduct represented two offenses of dissimilar import, the "import" being each person killed.

It is apparent that appellant's conduct constituted two or more offenses of dissimilar import based on the reasoning in *Jones*. Therefore, appellant's sixth assignment of error is overruled.

In the seventh assignment of error, appellant argues that the trial court erred in imposing a sentence consisting of a substantial fine, forfeiture of property, and a jail term.

Where a criminal sentence is within the statutory limits, it is presumed that the trial court considered the statutory mitigating criteria in the absence of an affirmative showing to the contrary. *State v. Crouse* (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283, 1285. Additionally, the trial court has broad discretion in the area of sentencing where the sentence is within the confines of a valid statute. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179.

Appellant's sentence, in the instant cause, was within the statutory guidelines, and appellant has failed to show that the trial court did not consider the appropriate sentencing standards.

Appellant's seventh assignment of error is overruled.

Based on the foregoing, the decision of the trial court is reversed due to an improper jury instruction and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

NADER and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.