OPINION
Appellant, Rudolph Babcock, appeals from the judgment of conviction and imposition of sentence rendered by the Chardon Municipal Court upon a jury verdict finding him guilty on one count of cruelty to animals in violation of R.C. 959.13(A)(1). For the reasons that follow, we affirm the judgment of the trial court.
The following facts, pertinent to this appeal, are based on the partial transcript of proceeding filed by appellant for our review. Appellant operated a business where he raised and bred dogs from his home at 11090 Mayfield Road, Munson Township, Geauga County, Ohio. Appellant's business also consisted of the sale of these dogs at another location.
Sarah Westman, a humane officer for the Geauga County Humane Society, received a number of complaints that appellant's dogs were in poor condition. Allegations surfaced that the animals were living in a filthy environment and received no care for days at a time. Ms. Westman decided to investigate the allegations of abuse, and, on October 23, 1997, drove out to appellant's residence at 11090 Mayfield Road around the noon hour.
When Ms. Westman arrived at appellant's residence, she noticed a large number of dog pens on the property. She knocked on a door to appellant's home and, upon receiving no answer, turned back toward her vehicle. As she walked back to her car, Ms. Westman noticed a small Shih Tzu type puppy crawling around on the ground next to a series of five pens closest to appellant's house. Ms. Westman picked up the puppy, the only dog on the property that was not confined, and observed that the animal was covered in fecal matter and appeared to have an injury to its leg. Ms. Westman noticed that the dogs in the pens adjacent to the area where she had found the puppy were, as she later described, "wallowing in an excess of fecal matter." She later described the pungent odor emanating from the pens and noted that many of the dogs looked lethargic. She further observed that one of the pens did not contain water and noticed several pens containing water bowls filled with dirty, discolored water. A number of pens also had food that had mixed in with large amounts of fecal matter that had been allowed to accumulate in the area.
At that time, Ms. Westman decided to take the puppy she had picked up on appellant's property to a veterinarian for further observation. She left a notice addressed to appellant indicating that she was removing the dog from the premises. She further warned appellant of the need to provide food and water for his dogs as well as taking corrective action with regard to the general unsanitary conditions of the pens.
Ms. Westman had the puppy examined by a local veterinarian who determined that the dog's leg injury was hereditary in nature and not an act of animal cruelty. However, the veterinarian diagnosed the puppy as suffering from ear mites, conjunctivitis (an inflammation of the eye), and coccidia (a parasite found in the animal's stool). Although the veterinarian would later acknowledge that the existence of any one of these conditions found in a pet would not be unusual, an animal suffering from all three of these conditions at one time was abnormal.
Ms. Westman attempted to obtain a warrant from which to search appellant's residence for further evidence of animal cruelty. Although unable to secure a warrant at the time, she returned to appellant's property at approximately 6:00 the evening of October 23, 1997, this time accompanied by officers of the Geauga County Sheriff's Department. As with her prior visit to the premises, appellant was not at home.
During the second search of appellant's property, Ms. Westman and the police officers had an opportunity to observe all of the pens and took a number of photographs depicting the deplorable conditions that the animals lived in while in appellant's care. These photographs included images of pens without water or water so filthy that it had turned brownish/green in color. The photographs also depicted numerous pens with dog food mixed in with a substantial amount of dog feces that had been left in the pens. All totaled, appellant had ninety-five (95) dogs, one (1) cat, and one (1) kitten on the property. All of the dogs, except the puppy taken by Ms. Westman earlier in the day, were confined in approximately sixteen (16) to twenty (20) pens of various sizes, each housing between four (4) and six (6) dogs.
Based on her observations concerning the overall conditions that existed on appellant's property, Ms. Westman made a decision to seize all the animals and take them back to the shelter. She called on a number of volunteers associated with the Geauga County Humane Society to begin the process of taking down identifying information on each animal and transporting them to the shelter. A veterinarian subsequently examined the animals and compiled reports containing a photograph of each animal as well as a description of its physical condition and treatment. The majority of the dogs examined suffered from ear mites, body lice, and coccidia. The veterinarian would later testify that most of the animals' conditions could be explained by "dirty environments where there is also overcrowding."
On October 27, 1997, Ms. Westman filed a criminal complaint against appellant in the Chardon Municipal Court alleging the following three counts of animal cruelty: Count A, recklessly confining animals, namely ninety-five dogs, one cat, and one kitten, without supplying the animals during confinement with a sufficient quantity of wholesome food and/or water in violation of R.C. 959.13(A)(1); Count B, keeping approximately thirty animals without wholesome exercise and change of air in violation of R.C.959.13(A)(4); and Count C, confining a puppy without affording it adequate protection from the elements in violation of R.C.959.13(A)(2). To the above charges, appellant entered a plea of not guilty and a jury trial subsequently commenced on March 5, 1998.
At trial, the state presented testimony from Ms. Westman as well as some of appellant's neighbors, volunteers from the Geauga County Humane Society, and police officers that all played a role in the removal of appellant's animals from the property. These witnesses described the general deplorable conditions that the animals were confined in while under appellant's care. Their testimony focused, however, on six (6) pens, each with between four to six dogs, which had no water or had water that was undrinkable. One volunteer for the humane society testified that she placed her hand in one of the dogs' water bowls and felt "slime and filth in the water." These witnesses further testified that the dogs' food was mixed in with feces that had been allowed to accumulate in the pens.
The state also presented the testimony of two veterinarians who relayed their findings as to the general condition of all the animals found on appellant's property. Aside from the ailments suffered by the dogs, as previously described, the animals were listed as being in "fair" shape. The state was permitted to introduce into evidence the veterinarians' reports, containing a picture of each animal, which described their condition and treatment.
Following the close of the state's case, appellant moved for an acquittal as to all charges as set forth in the complaint. The trial court ultimately granted appellant's motion for acquittal as to two counts: Count B, alleging that appellant kept thirty dogs without wholesome exercise and change of air; and Count C, confining a puppy without affording it adequate protection from the elements. The trial court denied appellant's motion as to the remaining count.
Prior to ruling on appellant's motion for acquittal, the trial court permitted the state to amend the charge in Count A to read that appellant failed to provide between twenty-five (25) to thirty (30) dogs with adequate food and/or water during their confinement as opposed to the ninety-five dogs, a cat, and kitten as set forth in the original complaint. The amendment to the charge was sought after the state's witnesses focused their testimony at trial on the conditions found in only six of the pens found on appellant's property, each housing between four and six dogs. Appellant did not object to the amendment of Count A. However, appellant argued that the state should not be permitted to introduce the veterinarians' reports as to all the animals found on appellant's property. Appellant argued that the jury should only see the pictures and reports of the twenty-five to thirty dogs the state accused him of abusing under the amended charge. After the state asserted that it could not identify which dogs came out of the six pens in question and suggested a way to address the situation, appellant's counsel interrupted by saying: "Fine. No objections at this time." (T.p. 281) The record on appeal contains no later objection made by appellant to either the amendment to the complaint or the introduction of evidence as to all the animals seized on appellant's property.
On March 7, 1998, following the conclusion of the evidence presented at trial, the jury returned its verdict finding appellant guilty on the remaining count of cruelty to animals, a violation of R.C. 959.13(A)(1). Appellant was subsequently sentenced to serve ninety (90) days in jail, fined $750 and ordered to pay court costs. The court suspended all of the fine and jail sentence and placed appellant on probation for a period of five years. Appellant was ordered to hire a licensed veterinarian to make routine inspections of appellant's kennel. He was further ordered to make a $5,000 cash contribution to the Geauga County Humane Society before his animals would be returned to him. From this judgment, appellant filed an appeal and now asserts the following three assignments of error:
 "[1.] THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL.
 "[2.] THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "[3.] THE TRIAL COURT ERRED IN ADMITTING THE STATE'S EXHIBITS."
In the first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion for a judgment of acquittal as to Count A as set forth in the amended complaint. We disagree.
Before reaching the merits of this assigned error, we note that appellant only provided this court with a partial transcript of the proceedings before the trial court. While this partial transcript included the testimony presented by the state at trial, it is apparent that evidence submitted by appellant in his defense was not included in the record on appeal. Our review of the record reveals that a motion for acquittal was made at the close of the state's evidence, but no record exists as to whether appellant renewed this motion at the close of all the evidence. Failure to renew a Crim.R. 29 motion for acquittal at the close of all the evidence in a case tried before a jury constitutes a waiver of the right to claim error in the denial of the motion.Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163;State v. Perry (May 2, 1997), Trumbull App. No. 96-T-5428, unreported at 12.
Notwithstanding the procedural infirmities with regard to appellant's attempt to raise a proper motion for acquittal, the state presented sufficient evidence to sustain a conviction for animal cruelty. Appellant was convicted of violating R.C.959.13(A), which provides, in pertinent part, as follows:
"No person shall:
 "(1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;"
 In the present case, appellant was accused of confining twenty-five to thirty dogs without a sufficient quantity of good wholesome food and water. We have previously recognized that R.C. 959.13 does not specify any degree of culpability. However, this court has specifically stated that the requisite mens rea to sustain a conviction pursuant to R.C. 959.13(A)(1) is recklessness. See State v. Lapping (1991), 75 Ohio App.3d 354, 358; State v. York (May 1, 1998), Lake App. No. 97-L-037, unreported, at 8.
Appellant asserts that the state failed to present any evidence to prove that he confined his animals without wholesome food or water. Appellant argues, without any citation to the record, that he tended to his dogs on a daily basis. He asserts that each pen contained food of good quality and a water bowl, albeit, in some pens the bowls had been tipped over or had discolored water when the Geauga County Humane Society inspected his facilities. He alleged in his briefing to this court that he provided for the dog during the nighttime hours and that his failure to be present on his property during the daylight hours when the humane society conducted their inspection did not constitute reckless behavior on his part.
Crim.R. 29(A) provides:
 "Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense of offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
It is well established that an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of an accused's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. Id.
Despite appellant's assertion in his appellate brief to this court, the record of the proceedings before the trial court contains testimony from appellant's neighbors regarding the accused's failure to tend to his animals. The neighbor's allegations were supported by Ms. Westman's observations of appellant's dogs having to eat food mixed in with feces that was allowed to pile up in the animals' living quarters. Substantial evidence was also presented that at least one pen was without water and several bowls had water badly discolored from "slime and filth in the water." This evidence helped to show the frequency and quality of care appellant gave his animals, and was more than sufficient to set forth the factual basis from which a jury could conclude that appellant acted recklessly in failing to provide wholesome food and water to some of his confined animals.
Within the first assignment of error, alleging that the trial court should have granted his Crim.R. 29 motion for acquittal, appellant has attempted to raise an additional issue for this court's review. Specifically, appellant argues that the original complaint was improperly amended to change Count A from including all of the dogs seized from his property to only between twenty-five and thirty dogs that were allegedly abused. Appellant asserts that the state should have been required to list the exact dogs that were denied sufficient food and water so that he was not forced to "guess" as to the animals he allegedly abused. This issue should have been raised as a separate assignment of error. App.R. 12(A)(2) and App.R. 16(A)(7). Furthermore, appellant failed to object to the amending of the indictment at trial and, therefore, waived the issue. Crim.R. 12(B)(2); Crim.R. 12(G).
Disregarding appellant's noncompliance with the rules, appellant has failed to demonstrate any prejudice caused by the state's amending of its complaint to better conform to the evidence presented at trial. During the presentation of the state's case, the prosecution's witnesses focused their attention on six pens, each confining between four and six dogs, which failed to have sufficient food and/or water. Appellant fully understood that the animals referenced in the amended complaint corresponded to the dogs that were confined in the six pens alleged to have inadequate food and water. Appellant was not placed in the position of having to "guess" as to the nature and extent of his crimes. Moreover, there was plenty of evidence presented to the jury to establish, in fact, that at least twenty-five to thirty dogs were confined without adequate food and/or water. Accordingly, appellant's first assignment of error is without merit.
In the second assignment of error, appellant contends that the jury's verdict is against the manifest weight of the evidence. We disagree.
As previously noted in our discussion of the first assignment of error, appellant failed to provide this court with a complete transcript of all the proceedings before the trial court. Generally speaking, when an appellant seeks to argue on appeal that a judgment is against the manifest weight of the evidence, the entire transcript of the trial court's proceedings should be provided to the appellate court. App.R. 9(B); Mentor v. Kreischer
(Sept. 23, 1994), Lake App. No. 93-L-198, unreported, at 3. It is axiomatic that the party seeking to appeal a lower court's judgment must provide a record that demonstrates any claimed errors. In the present case, appellant did not submit a complete transcript of all the testimony presented at trial. While appellant did provide a complete transcript of the state's evidence, he failed to submit a transcript of the evidence he presented in his defense. We will, however, briefly consider this assignment of error on those portions of the record that were filed with this court.
In State v. Schlee (Dec. 23, 1994), Lake App. No 93-L-082, unreported, this court distinguished between "sufficiency of the evidence" challenges and "manifest weight" challenges. In defining "manifest weight" challenges we stated:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "* * * [t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * "`(Citations omitted.) (Emphasis added.) [State v.] Davis [1988], 49 Ohio App.3d 109, 113." Id. at 11. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
It is the well established law in Ohio that the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Loza (1994), 71 Ohio St.3d 61,69.
In the case sub judice, appellant argues that there was no credible evidence that any animal, let alone twenty-five to thirty "unidentified animals," were victimized by a continued lack of wholesome food and/or water. Appellant asserts that the mere fact that some of his dogs may have overturned their food or water bowls before he arrived home does not constitute a violation of the law.
Without repeating our recitation of the evidence presented in the record as to the filthy conditions at appellant's kennel, we note that this is not a case from which appellant can seriously argue that his animals were responsible for the condition in the pens. Quite simply, the level of filth appellant allowed to accumulate at his kennel provided highly probative evidence as to the level of care he gave to his animals including the lack of wholesome food and water that was provided. From the evidence presented at trial, including all the reasonable inferences, we cannot conclude that the jury clearly lost its way and created such a miscarriage of justice to overturn appellant's conviction. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, appellant asserts that the trial court erred in admitting photographs and medical charts for all the animals that were seized from his home instead of the exact twenty-five to thirty animals he was accused of abusing as set forth in the amended complaint. Appellant further asserts that some of the photographs and reports showed his animals suffering from a number of ailments that were no different from "any elementary school * * * [where] there will always be children who suffer from a cold (illness of disease), a scratch (trauma), a stutter (congenital ailment) or some other condition which is common, ordinary, and not the result of child abuse." Appellant argued that this evidence was of no consequence to the determination of the action against him in the amended complaint.
As previously noted, appellant withdrew an objection that he made with respect to this very evidence at trial. Ordinarily, the failure to object at trial amounts to a waiver of the alleged error. See Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41,43; State v. Clark (May 24, 1991), Portage App. No. 90-P-2211, unreported at 5.
Overlooking appellant's failure to properly object to the evidence that is the subject of this assignment of error, we note that all relevant evidence is admissible. See Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Moreover, a trial court has broad discretion in determining the admission and exclusion of evidence and an appellate court will not interfere in this evidentiary determination absent an abuse of discretion. See, e.g. State v. Apanovitch (1987), 33 Ohio St.3d 19, 25. An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or conscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
As alluded to in appellant's prior assignments of error, the evidence presented concerning all of the animals demonstrated appellant's general lack of care for his animals. This lack of care established, contrary to appellant's assertions in his appellate brief, that he did not leave his dogs alone for a few hours only to return to find that his animals had tipped over their food and/or water bowls. The photographs and veterinarian records of all the animals are highly relevant evidence because they showed the condition of the animals at or near the time of the alleged offense as well as establishing the necessary mens rea
for appellant to be convicted of animal cruelty. Moreover, upon reviewing all of the evidence, we cannot conclude that the probative value of all the photographs and veterinarian reports was substantially outweighed, pursuant to an Evid.R. 403 analysis, by the danger of unfair prejudice associated with this evidence. The photographs were a far cry from displaying gruesome or overly graphic details of the animals' condition and the veterinarian reports, the majority of which contained very little information, helped to confirm the veterinarians' testimony regarding the general condition of the animals. Under the circumstances, there is no merit to appellant's third assignment of error.
Based on the foregoing, the judgment of the trial court is affirmed.
JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.