OPINION
Defendant-appellant, Judy Chamberlain, appeals her conviction in the Madison County Municipal Court for cruelty to animals. For the reasons that follow, we affirm.
Appellant owns a dog kennel in Mt. Sterling, Ohio known as Judulu Kennels ("kennel"). Appellant operates her kennel primarily for breeding dogs.
In March 1994, the Madison County Sheriff's Office received the first of four complaints of record regarding the conditions at appellant's kennel. The complaining party alleged that appellant's kennel was overcrowded and dirty. Deputy Ty Lickliter and Dr. Herman[1] of the Madison County Health Department inspected the kennel and filed a report with the sheriff's office. At that time, Sergeant Doug Crabbe assumed responsibility for any further investigations regarding the kennel.
In June 1996, the sheriff's office received another complaint about overcrowding and cleanliness at the kennel. Sgt. Crabbe and Dr. Herman inspected the kennel and determined that the complaint was well-founded. Dr. Herman advised appellant to clean the kennel, reduce the number of dogs, and provide additional ventilation.
Sgt. Crabbe and Dr. Herman investigated a third complaint in July 1997. Sgt. Crabbe and Dr. Herman again observed deplorable conditions at the kennel including overcrowding, poor ventilation, soiled fur, and dirty food and water. Sgt. Crabbe testified that excrement was scattered throughout the cages, the temperature was very hot, and the smell was "tremendous."
On May 6, 1998, Ms. Keena Hill ("Hill") and her friend Carol Murphy ("Murphy") reported to the sheriff's office that they had observed sick and injured animals at the kennel. In addition, they alleged that the kennel was overcrowded and filthy, with decomposing feces in the cages. Based on the report from Hill and Murphy, Sgt. Crabbe and Dr. Herman proceeded to inspect appellant's kennel on May 7, 1998. This time, however, appellant ordered them to leave and not to return without a search warrant. Shortly after Sgt. Crabbe and Dr. Hermann left the kennel, appellant contacted the sheriff's office and invited them to return. Even though appellant consented to an inspection, Sgt. Crabbe decided to honor appellant's request to obtain a search warrant.
Based on his prior observations at the kennel and the complaint filed by Hill and Murphy, Sgt. Crabbe submitted an affidavit in support of a search warrant to a judge of the Madison County Court of Common Pleas. Sgt. Crabbe attached to his affidavit the written statements of Hill and Murphy detailing their observations at the kennel. After considering the affidavit, the judge approved the search warrant on May 8, 1998 authorizing the sheriff's office to search the kennel and seize any evidence of cruelty to animals.
That same day, Sgt. Crabbe executed the warrant and searched the kennel. Sgt. Crabbe testified that the kennel was overcrowded, hot, and malodorous. He noted that the dogs' cages were littered with fresh and decaying feces. Sgt. Crabbe noticed many animals had dirty food and water. He testified that he noticed animals with running eyes, injuries, and missing and matted fur. The paper lining some of the cages was torn, allowing urine and feces to fall down into the cages housing dogs that were stacked beneath them. Sgt. Crabbe testified that the Humane Society of Madison County ("Humane Society") removed at least seventeen dogs from the premises pursuant to the search warrant so they could receive medical attention.
On May 13, 1998, the Dog Warden, with the assistance of the Humane Society and the sheriff's office, removed the remaining one hundred eight dogs from the kennel pursuant to a court order. Veterinarian Elizabeth A. Dible, D.V.M., examined the dogs taken from appellant's kennel. Some of those dogs suffered from severe flea infestation, sarcoptic mange, heartworms, cataracts, dry eye syndrome, matted hair, overgrown nails, degenerative joint disease, urinary infections, ear infections, and broken or malformed jaws. Some of the dogs were soiled and had feces stuck in their fur.
Dr. Dible testified that the conditions she observed in these dogs existed while they were in the care of appellant, and that the dogs had received little or no treatment for their ailments. Dr. Dible opined that at least ten of the dogs were either suffering or were experiencing unnecessary pain. Dr. Dible noted that reasonable remedies were available to appellant to treat the dogs' afflictions. On the professional advice of Dr. Dible, the Humane Society euthanized at least five of the dogs prior to trial.
On June 15, 1998, appellant was charged with eleven counts of cruelty to animals in violation of R.C. 959.13. Each count concerned appellant's actions or omissions toward a separate dog. On June 23, 1998, appellant filed a motion to suppress, challenging the sufficiency of probable cause to search her kennel. After conducting a suppression hearing, the trial court apparently overruled appellant's motion.[2]
Appellant was tried before a jury on November 19 and 20, 1998. At the close of the state's case, the trial court granted appellant's Crim.R. 29 motion in part and dismissed one of the counts.
Appellant testified on her own behalf and introduced into evidence documents that purported to demonstrate that she provided routine and adequate care for the dogs. In addition, she offered the testimony of her veterinarian, Gary Junk, D.V.M., to show that she did provide occasional veterinary care to some of the dogs. Appellant's adult children, Sheryl Lynn Swigert and Donald W. Anders, testified that the dogs received adequate care and that the kennel was clean. Richard Robinson, a "volunteer" at the kennel, provided similar testimony, adding that the dogs at issue merely needed to be groomed.
The jury found appellant guilty on eight counts of cruelty to animals and acquitted her on two counts. The trial court sentenced appellant to ninety days in jail on each of the eight counts, suspending all but thirty days of the sentence. In addition, the trial court fined appellant $750 for each of the counts, but suspended all fines except $2,000 and court costs. The trial court placed appellant on five years probation and ordered her to complete one hundred hours of community service. As conditions of probation, the trial court prohibited appellant from operating a kennel, applying for a kennel license, and raising, keeping, selling, training, owning or possessing any dogs. From this judgment, appellant timely appeals, raising five assignments of error. For purposes of clarity, we will address some of appellant's assignments of error out of order.
In her first assignment of error, appellant contends that the trial court erred by overruling her motion to suppress the evidence obtained by Sgt. Crabbe pursuant to the search warrant. Appellant first complains that the record lacks important documents relating to her motion to suppress. Specifically, she notes that the record lacks an entry of the official decision of the court regarding her motion. Appellant also complains that she requested the trial court to issue "findings of fact and conclusions of law" regarding her motion to suppress, but the record is devoid of any response from the trial court.
It is well-established that when a trial court fails to rule on a motion, the appellate court will presume that the trial court overruled the motion. See, e.g., State ex rel. Forsyth v. Brigner
(1999), 86 Ohio St.3d 299. We also note that, pursuant to App.R. 9(B), appellant has the burden of filing with the appellate court the appropriate portions of the record necessary for the determination of an appeal. If no transcript or report of the proceedings is available, then appellant "may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App.R. 9(C). In the absence of a complete record, an appellate court will indulge in "all reasonable presumptions consistent with the record * * * in favor of the validity of the judgment under review and the legality of the proceedings below." State v. Frost (1984),14 Ohio App.3d 320, 321.
Therefore, we will presume that the trial court overruled appellant's motion to suppress evidence and address the merits of appellant's assignment of error. In addition, although Crim. R. 12(E) requires the trial court to state its essential findings regarding factual issues on the record, the record in this case provides a sufficient basis to review appellant's assignment of error. See State v. Almalik (1987), 41 Ohio App.3d 101, 105
(holding that where the court's findings of fact are inadequate, but the record provides a sufficient basis for review, an appellate court does not need to remand the case for the entry of findings of fact).
Appellant also contends that Sgt. Crabbe's affidavit lacked sufficient facts for the trial court to determine the existence of probable cause. Specifically, appellant argues that Sgt. Crabbe's affidavit is defective because it fails to indicate any basis for determining the veracity of complainants Murphy and Hill.
When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of a reviewing court is only to ensure that the issuing judge had a substantial basis for concluding that probable cause existed.State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213,238-39, 103 S.Ct. 2317, 2332. An appellate court must not conduct a de novo review of the sufficiency of the affidavit. Id. A reviewing court should accord great deference to the judge's determination of probable cause, and doubtful or marginal cases should be resolved in favor of upholding the search warrant. Id.
"A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a search warrant."Gates, 462 U.S. at 236, 103 S.Ct. at 2331.
To find probable cause to issue a search warrant, the issuing judge must simply
 make a practical, common-sense decision whether given all of the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
George, 45 Ohio St.3d at paragraph one of the syllabus, followingGates, 462 U.S. at 238-39, 103 S.Ct. at 2332. A judge may base a finding of probable cause "on hearsay in whole or in part, provided there is a substantial basis for believing the source of hearsay to be credible and for believing that there is a factual basis for the information." Crim.R. 41(C). If a confidential or anonymous informant supplies the hearsay, the informant's veracity, reliability and basis of knowledge are all "highly relevant" in determining probable cause. Gates, 462 U.S. at 230,103 S.Ct. at 2328. However, hearsay "information coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause." State v. Garner (1995),74 Ohio St.3d 49, 63, certiorari denied (1996), 517 U.S. 1147,116 S.Ct. 1872. Unlike informants, citizen eyewitnesses do not expect any gain or to curry favor with the authorities in exchange for their information, and are less likely to produce untrustworthy information. Id. Therefore, police officers do not need to provide evidence of past instances of reliability of a citizen eyewitness before using his hearsay statements in an affidavit for a search warrant. Id.
Thus, in reviewing the trial court's determination of probable cause to issue a search warrant, we must evaluate the totality of the circumstances to ensure that the affidavit provided a substantial basis for the trial court to conclude there was a fair probability that evidence of cruelty to animals would be found at appellant's kennel. The affidavit in this case included Sgt. Crabbe's statement detailing his personal observations at the kennel in 1996 and 1997. The affidavit also included the written statements of Murphy and Hill describing the conditions they personally witnessed during their visit to the kennel on May 7, 1998. The descriptions of Murphy and Hill chronicled the same conditions previously observed by Sgt. Crabbe: overcrowding, piles of feces, poor ventilation, dirty animals, sick animals and injured animals.
We conclude that Sgt. Crabbe's affidavit provided a substantial basis for the trial court to conclude that there was a fair probability that evidence of cruelty to animals would be found at appellant's kennel. Further, since Murphy and Hill are citizen eyewitnesses and not professional informants, Sgt. Crabbe did not need to provide information in the affidavit regarding their veracity. Accordingly, appellant's first assignment of error is overruled.
In her fourth assignment of error, appellant contends that the prosecutor engaged in misconduct during his closing argument. Appellant cites as misconduct the prosecutor's reference to a dog named "Max." The trial court dismissed the charge relating to this dog after it granted appellant's Crim.R. 29 motion at the close of the state's case. Appellant also argues that the prosecutor maliciously interjected his personal opinion into his closing argument by calling her a "liar." Appellant bases her assertion solely upon the following portion of the closing argument:
 [By the Prosecutor:] Ladies and gentlemen, I submit to you that Judy Chamberlain is lying to protect herself. All you need to know to get an idea where Judy Chamberlain is coming from on these cases is [sic] some of the statements that you've heard. Keena Hill, her dog, Max [sic]. We know he ultimately had a fractured pelvis. She wants to take the dog to a vet and Judy says, put him in a pen for a night or two he'll be fine.
Appellant did not object to these statements at trial. As a result, appellant has waived the issue unless the errors rise to the level of plain error under Crim.R. 52. See State v. Nicholas
(1993), 66 Ohio St.3d 431, 435-36. Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A plain error within the meaning of Crim.R. 52(B) "is an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v. Craft
(1977), 52 Ohio App.2d 1, paragraph one of the syllabus.
Under plain error analysis it must be clear from the record that an error was committed and, except for the error, the result of the trial clearly would have been otherwise. State v. Bock
(1984), 16 Ohio App.3d 146, 150. Moreover, the plain error rule should be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Cooperrider (1983), 4 Ohio St.3d 226.
"The test regarding prosecutorial conduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."State v. Smith (1984), 14 Ohio St.3d 13, 14. Both the defense and the prosecution have wide latitude in closing arguments to comment on what the evidence has shown and what reasonable inferences can be drawn from the evidence. State v. Lott (1990), 51 Ohio St.3d 160,165. However, prosecutors must avoid insinuations and assertions calculated to mislead the jury and refrain from expressing a personal opinion as to the credibility or guilt of the accused. Smith, 14 Ohio St.3d at 14. In assessing whether a particular comment is improper, a reviewing court must review the prosecutor's argument as a whole, not in isolated parts. State v.Moritz (1980), 63 Ohio St.2d 150, 157. Thus, even if a prosecutor's remarks are improper, they must be considered in light of the entire case to determine whether such remarks prejudicially affected the substantial rights of the defendant.Id.
The prosecutor's reference to Max is improper because the trial court dismissed the charge relating to this particular dog prior to closing argument. When viewed in light of the entire closing argument, however, the statements were short and insignificant compared to the thorough summation of the evidence relating to the remaining ten dogs. In addition, the trial court prepared separate verdict forms for each of the ten dogs comprising the remaining counts and carefully instructed the jury to consider each count independently. We must assume that the jurors followed the court's instructions while independently evaluating the evidence for each of the remaining ten dogs and that they did not consider the prosecutor's statements regarding Max. See State v. Loza (1994), 71 Ohio St.3d 61, 79.
Regarding the prosecutor's comment that appellant was "lying," we first note that appellant has mischaracterized the record by claiming the prosecutor "maliciously" called her a "liar." The prosecutor actually stated that appellant "was lying to protect herself." It is improper for a prosecutor to state that the defendant is a liar or that he believes the defendant is lying. State v. Rahman (1986), 23 Ohio St.3d 146, 154. However, a prosecutor may suggest that the evidence demonstrates that the defendant is lying, scheming or has ulterior motives. State v.Draughn (1992), 76 Ohio App.3d 664, 670; State v. Gunn (Aug. 7, 1998), Montgomery App. No. 16617, unreported; State v. Payne (Dec. 30, 1996), Lucas App. No. L-95-317, unreported.
In this case, the prosecutor was not precluded from reminding the jury that some of the records submitted by appellant to prove that she provided routine care for the dogs appeared to be fictitious exculpatory evidence. Further, the prosecutor is permitted to demonstrate that appellant's records are logically inconsistent with the expert testimony regarding the maladies suffered by each of the animals. While the prosecutor could have been more careful to link his argument that defendant was lying to protect herself with the evidence presented at trial that tended to support the claim, the evidence in the record supports the argument.
In the present case, we cannot say that the remarks made by the prosecutor during his closing arguments, as a whole, were so improper that they prejudiced appellant's rights or so corrupted the trial as to preclude a fair verdict. Therefore, we find there is no plain error within the meaning of Crim.R. 52(B). Accordingly, appellant's fourth assignment of error is overruled.
In her second assignment of error, appellant asserts a claim of ineffective assistance of counsel. Appellant argues that trial counsel should have objected to those statements appellant assigns as prosecutorial misconduct.
To establish a claim of ineffective assistance of counsel, appellant must first show that her counsel's actions were outside the wide range of professionally competent assistance. Stricklandv. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. Second, appellant must demonstrate that she was prejudiced at trial as a result of counsel's actions. Id. at 689,104 S.Ct. 2065. To demonstrate prejudice, appellant must prove that, but for counsel's actions, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694,104 S.Ct. at 2068. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of reasonable professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258.
In light of our disposition of appellant's fourth assignment of error, we cannot conclude that counsel's failure to object during the prosecutor's closing argument fell below the objective standard of reasonable competence. Counsel could have chosen not to object for a myriad of reasons. During appellant's closing argument, trial counsel responded thoroughly to the prosecutor's summation of the evidence and addressed appellant's record-keeping at some length. Appellant has not demonstrated that the result of the trial would have been different if counsel had objected to the closing argument. Accordingly, appellant's second assignment of error is overruled.
In her third assignment of error, appellant argues that the verdict is against the manifest weight of the evidence. Specifically, appellant contends that there was no credible evidence to support that appellant was reckless as to the care of her animals.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The jury found appellant guilty on eight counts of cruelty to animals in violation of R.C. 959.13. R.C. 959.13(A) (1) states that no person shall
 torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water[.]
R.C. 1717.01 defines torture as including "every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief."
Recklessness is the appropriate mental state to sustain a conviction under R.C. 959.13. See State v. Lapping (1991),75 Ohio App.3d 354, 357; State v. Bravard (Oct. 6, 1986), Warren App. No. CA85-12-093, unreported. A person acts recklessly when she perversely disregards a known risk that her conduct is likely to cause a certain result or is likely to be of a certain nature, with heedless indifference to the consequences. R.C. 2902.22(C).
At trial, Sgt. Crabbe, Keena Hill and Carol Murphy testified to the conditions they witnessed at appellant's kennel including overcrowding, poor ventilation, decomposing feces, and dirty food and water. They also provided general descriptions of sick or injured animals. Sgt. Crabbe described his prior visits to the kennel with Dr. Hermann and stated appellant was advised to correct the conditions at the kennel. Dr. Dible testified at length regarding each of the ten animals involved in the charges against appellant. In each case, she provided expert testimony that each animal was needlessly suffering because appellant could have provided reasonable relief or remedies. She supported her oral testimony with photographs of the dogs and her contemporaneous medical observations. Dr. Dible further noted that the maladies for each of the ten dogs existed while they were in the care and control of appellant.
Appellant attempted to establish that the dogs were in good health when they were at the kennel. She attempted to introduce records demonstrating routine care for each of the dogs. However, the state demonstrated that some of the records were dubious and others contained omissions. Appellant offered the expert testimony of her veterinarian, Dr. Junk, in an effort to rebut Dr. Dible's testimony. However, on cross-examination, even Dr. Junk admitted that all of the animals were in need of veterinary care and that the animals did not look like they had received immediate treatment for their maladies. In striking contrast to the testimony of both veterinarians, some of appellant's witnesses claimed that the animals were healthy and simply needed grooming.
Based on the foregoing and a thorough review of the record, we find that the jury neither lost its way nor created a manifest miscarriage of justice by finding appellant guilty on eight of the ten counts of cruelty to animals. There was ample evidence for the jury to conclude that appellant's reckless care and treatment of the animals resulted in unnecessary pain or suffering for the dogs. Appellant's conviction of eight counts of cruelty to animals is not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is overruled.
Appellant's fifth assignment of error contends that the trial court erred by sentencing her for each of the eight counts for which she was found guilty. Appellant argues that the eight counts of cruelty to animals are allied offenses of similar import with a single animus and, as such, the trial court should have only imposed one sentence pursuant to R.C. 2941.25.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Under R.C. 2941.25, there is a two-part test to determine whether two or more crimes with which a defendant is charged are allied offenses of similar import. First, the elements of the crimes are compared to determine whether the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other. State v. Blankenship
(1988), 38 Ohio St.3d 116, 117. Second, the defendant's conduct is reviewed to determine whether the defendant committed the crimes separately or if there was a separate animus for each crime. Id. A defendant may be convicted for allied offenses of similar import if the court finds that the crimes were committed separately or that there was a separate animus for each crime.Id.
In this case, appellant's conduct constitutes multiple offenses of dissimilar import even though she was convicted eight times for violating R.C. 959.13. Her reckless conduct toward each animal provides a separate animus for each crime. See State v.Jones (1985), 18 Ohio St.3d 116, 118 (holding that R.C. 2941.25
does not prohibit multiple convictions under R.C. 2903.06 for recklessly causing the death of multiple passengers in a single car accident). Moreover, though appellant engaged in a single extenuated course of recklessness, each dog is a different victim. The state presented evidence regarding each of the dogs and appellant attempted to provide evidence of care and treatment for the dogs individually. The jury considered the evidence for each dog separately and returned separate verdicts. See id.; State v.York (Feb. 8, 1993), Butler App. No. CA92-06-109, unreported (holding that where a defendant commits the same offenses against separate victims during the same course of conduct, the defendant may be convicted for each offense); but see, contra State v. Bybee
(June 25, 1999), Hamilton App. No. C-980850, unreported (holding that a continuing pattern of neglect toward different dogs prohibited multiple convictions for cruelty to animals). Accordingly, we conclude that the trial court appropriately convicted and sentenced appellant on all eight counts.
In her fifth assignment of error, appellant also challenges the conditions of her probation, which prohibit her from operating a kennel, applying for a kennel license, and raising, keeping, selling, training, owning or possessing any dogs for five years. Without citation to any authority, appellant proclaims that this condition of probation violates her "constitutional right of ownership of property and its enjoyment [sic]."
A trial court has broad discretion in determining conditions of probation and will not be subject to reversal on appeal absent an abuse of discretion. State v. Jones (1990), 49 Ohio St.3d 51,52. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In setting the conditions of probation, R.C. 2951.02(C) provides that "* * * [i]n the interests of doing justice, rehabilitating the offender, and insuring his good behavior, the court may impose additional requirements on the offender * * *." In determining whether the conditions of probation relate to R.C. 2951.02(C), courts
 should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or is reasonably related to future criminality and serves the statutory ends of probation.
Jones, 49 Ohio St.3d at 53.
The probationary conditions in this case have an obvious relationship to the crimes for which appellant was convicted. The conditions also reasonably relate to rehabilitating appellant, since she will presumably be able to own and breed dogs again once she has completed her probation. The conditions relate to future criminality and serve the statutory ends of probation since they will ensure that appellant has little opportunity to commit cruelty to animals during the term of her probation. See State v.Sheets (1996), 112 Ohio App.3d 1, 8-9 (holding that forfeiture of animals and prohibition against owning animals for three years were valid conditions of probation in a conviction for cruelty to animals); State v. Kilburn (Mar. 30, 1998), Warren App. No. CA96-12-1320, unreported (holding that forfeiture of dogs, sheep, goats and horse was appropriate condition of probation for conviction of animal cruelty).
Therefore, the trial court did not abuse its discretion in setting the conditions of appellant's probation. Accordingly, appellant's fifth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] The record lacks Dr. Herman's full name and information regarding his training or credentials.
[2] The trial court's decision is not in the record.