OPINION
Defendant-appellant Michael Amill appeals from his conviction of murder with a firearm specification which was entered in the Mahoning County Common Pleas Court. For the reasons hereinafter set forth, the conviction of appellant is affirmed.
 I. STATEMENT OF FACTS
On February 20, 1995, appellant went to a small party on Willis Avenue in Youngstown, Ohio. At said party, appellant was among those who drank beer, smoked marijuana, and ingested valium. Moreover, it appears that a shotgun was passed around at the party. Many witnesses saw appellant staggering around the party with the gun and pointing it at a friend who then took it off of him. At approximately 7:00 p.m., someone mentioned that Ronald Moses was next door at his friend's apartment. Thus, Dale Jackson, whose brother was allegedly sold fake crack cocaine by Mr. Moses, decided to go next door. Dale testified that appellant followed him with the shotgun.
A neighbor verified that Mr. Moses was outside talking to Dale and appellant that evening. During the conversation, Mr. Moses refused to refund the $50 he collected from the crack sale. Dale testified that when appellant initially displayed the shotgun, Mr. Moses pushed it away and laughed. Mr. Moses then said that he would give them some marijuana. He reentered the apartment and retrieved his jacket. When he returned to talk to Dale and appellant, an argument ensued.
Dale testified that when someone yelled from the house, "fuck that nigger," appellant pulled the trigger shooting Mr. Moses in the side of the neck. Mr. Moses died from the twelve gauge shotgun blast which was fired from fairly close range. Appellant was arrested for the murder the next day, after his friends gave statements to the police which implicated him.
Following the disposition of various motions, appellant's trial proceeded from February 12 through February 21, 1996, on which date the jury found him guilty of murder and an accompanying firearm specification. The trial court sentenced appellant to an indefinite sentence of fifteen years to life with an additional three years of actual incarceration for the specification. The within timely appeal followed.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth seven assignments of error, the first of which alleges:
 "THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT, IN OVERRULING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AND REQUIRING APPELLANT TO STAND TRIAL ON AN INDICTMENT WHICH IS BASED PARTIALLY ON PERJURED TESTIMONY IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 2, SECTION 10 OF THE OHIO CONSTITUTION, HIS RIGHT TO INDICTMENT BY A GRAND JURY UNDER SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
The day after the murder, John Edwards, who brought the shotgun to the party, gave a statement to police claiming that he witnessed appellant shoot Mr. Moses. Later, he testified in front of the grand jury in accordance with his statement to police. It was then discovered that Mr. Edwards never actually witnessed the shooting. Thereafter, the court allowed the defense to read the grand jury transcripts. Prior to trial, on January 5, 1996, the defense filed a motion to dismiss the indictment as it was partially based upon perjured testimony. The state opposed and the court overruled this motion. At trial, Mr. Edwards admitted that he lied in his statement as well as in front of the grand jury. (Tr. 490, 494, 496).
Appellant relies on United States v. Basurto (C.A. 9, 1974),497 F.2d 781, for the proposition that the state cannot make an accused stand trial on an indictment that contains perjured grand jury testimony. However, in State v. Hill (Nov. 25, 1992), Columbiana App. No. 90-C-56, unreported, we noted that the Ninth Circuit Court of Appeals no longer follows its stringent Basurto
holding, and we affirmed the denial of a pretrial motion to dismiss an indictment based in part on perjured testimony. Hill,supra at 4. This court follows the rule that an indictment will only be dismissed in cases such as the one at hand if the prosecution knowingly used perjured grand jury testimony that is material to the indictment. Id., citing United States v. Adamo
(C.A. 6, 1984), 742 F.2d 927, 940.
Here, there is no evidence that the prosecution knew that Mr. Edwards was lying. Furthermore, Dale Jackson also testified in front of the grand jury. He stated that he was standing right next to Mr. Moses when appellant shot him. Thus, the indictment did not rely solely upon Mr. Edwards perjured testimony. Even without Mr. Edwards perjured testimony, the evidence before the grand jury would have been sufficient to sustain a finding of probable cause. See United States v. Udziela (C.A. 7, 1982),671 F.2d 995, 1000 (stating that if the prosecution was unaware of the perjury while it was occurring, then the indictment shall not be dismissed before trial if other sufficient evidence is present which would allow the grand jury to indict).
Moreover, the prosecution and the defense questioned Mr. Edwards at trial about his prior lies. Mr. Edwards testified that he had been trying to protect everyone except the shooter, i.e. appellant. The credibility of Mr. Edwards was subject to scrutiny by the jury. See State v. Jewell (Aug. 22, 1990), Vinton App. No. CA448, unreported, 8. Our court has adopted the following rationale:
 "Even if the perjured testimony had been brought to the attention of the grand jury, it seems highly unlikely, in view of the petit jury's later finding of guilt after a full trial, that the grand jury would have failed to indict based on probable cause." Hill, supra, quoting Talamante v. Romero
(C.A. 10, 1980), 620 F.2d 784, 791.
Thus, any impropriety at the grand jury proceeding was rendered harmless by the trial jury's finding of guilt beyond a reasonable doubt. See State v. Vidu (July 23, 1998), Cuyahoga App. Nos. 71703, 71704, unreported, citing our Hill decision. Hence, this assignment of error is overruled.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE TRIAL COURT'S FAILURE TO ENFORCE APPELLANT'S MOTION FOR THE SEPARATION OF STATE'S WITNESSES DEPRIVED APPELLANT OF HIS RIGHT TO EFFECTIVE CROSS-EXAMINATION OF WITNESSES AND A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION."
Before trial, the court ordered a separation of witnesses upon motion of the defense. Appellant complains that Lieutenant David McKnight of the Youngstown Police Department, who was the investigating officer in the murder case, sat at the prosecution's table throughout the trial and then testified after listening to the testimony of fourteen state witnesses. Pursuant to Evid.R. 615, a court must order separation of witnesses upon a party's motion. However, a separation order shall not exclude the following people from the courtroom:
 "(1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."
The state, which is not a natural person, is a party in a criminal case. In accordance with Evid.R. 615 (2), the prosecution may designate a law enforcement officer as a representative of the state who may sit through the entire trial without regard to a separation order. See, e.g., State v. Woods
(Dec. 31, 1998), Montgomery App No. 16665, unreported, 5; Statev. Turner (Feb 27, 1997), Allen App. No. 1-96-27, unreported, 9;State v. Rahmon (Oct. 28, 1993), Cuyahoga App. No. 63913, unreported, 11.
Appellant's contention that a city police officer is not an officer or employee of the "state" has no merit. In so holding, we concur with the First Appellate District which stated:
 "In a criminal prosecution, a representative of the law enforcement agency handling the prosecution — even if the representative is a witness — may assist the prosecutor during trial and may remain in the courtroom although a separation of witnesses has been ordered." State v. Fuller (Sept. 26, 1997), Hamilton App. No. C-960753, unreported, 1.
See, also, State v. Lapping (1991), 75 Ohio App.3d 354, 363
(holding that Trumbull County Humane Officers were officers of the state under Evid.R. 615); State v. Scott (Dec. 31, 1998), Sandusky App. No. S-98-022, unreported, 3 (holding that police officer for the city of Fremont was an officer of the state). For the above reasons, this assignment of error is overruled.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error provides:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FAILING TO INSTRUCT THE JURY ON THE POSSIBILITY THAT APPELLANT'S INTOXICATION NEGATED FORMATION OF THE SPECIFIC INTENT TO MURDER, THEREBY DEPRIVING APPELLANT OF HIS RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION."
In the case at bar, appellant was charged with murder. Pursuant to R.C. 2903.02(A), murder is a specific intent crime as it requires the mental state of purpose. Evidence of voluntary intoxication is admissible to show that a defendant was incapable of forming the requisite mental state in specific intent crimes.State v. Fox (1981), 68 Ohio St.2d 53, 55. The trial court has the discretion to determine whether the evidence presented warrants a jury charge on the intoxication defense. Id. at 56. However, a party may not assign as error on appeal the court's failure to give a certain instruction unless the party objected before the jury began deliberations. Crim.R. 30 (A). The failure to object to jury instructions waives all but plain error. Statev. Stojetz (1999), 84 Ohio St.3d 452, 458.
In apparent recognition of the foregoing rules, appellant acknowledges his failure to seek an intoxication instruction from the trial court but avers that the court's failure to sua sponte
instruct the jury on intoxication amounts to plain error pursuant to Crim.R. 52 (B). Under a plain error analysis, we must decide: (1) whether an intoxication instruction was warranted; and if so, (2) whether the result of appellant's trial clearly would have been different had the court instructed the jury on intoxication.State v. Hill (1995), 73 Ohio St.3d 433, 443.
"Evidence of intoxication is sufficient to raise the intoxication defense only where, if believed, it would support acquittal." State v. Mitts (1998), 81 Ohio St.3d 223, 228. Intoxication will not negate the element of purpose "merely because the evidence suggests reduced inhibitions, impaired judgment or blurred appreciation by the defendant of the consequences of his conduct." State v. Hicks (1989), 43 Ohio St.3d 72, syllabus. Because even severe intoxication can coexist with purpose to kill, the mere fact that a defendant was drunk and on drugs does not require an intoxication instruction. Id. at 74. Thus, the defendant must be grossly intoxicated and "mentally unable to intend anything." State v. Otte (1996), 74 Ohio St.3d 555,564. There must be evidence to "negate conscious awareness of the circumstances and events that transpired." State v. Wolons
(1989), 44 Ohio St.3d 64, 69.
Applying these rules on the intoxication defense to the facts in the case sub judice, we cannot say that an intoxication instruction was warranted since the record does not indicate that appellant clearly would have been acquitted if the trial court had given an intoxication instruction. The jury apparently believed the testimony of Dale Jackson who stated that while he was arguing with Mr. Moses, appellant hopped over a fence to join the meeting. While doing so, appellant allegedly dropped the shotgun and picked it back up. Dale testified that appellant pointed the gun at Mr. Moses prompting Mr. Moses to laugh and push the gun away. An argument allegedly ensued between Dale and Mr. Moses. Someone then yelled, "fuck that nigger," prompting appellant to pull the trigger and shoot Mr. Moses in the neck. It is then contended that appellant dropped the gun and started to run. Mr. Edwards told appellant he had better retrieve the gun. Appellant then returned to the crime scene to retrieve the gun. While he was there, it is alleged that he removed marijuana from the victim's pants and later tried to sell it to his friends. Witnesses testified that appellant repeatedly stated that he "blew that motherfucker off his feet." (Tr. 861). One witness testified that when asked who shot the victim, appellant pointed to himself.
That appellant was inebriated before the shooting occurred is supported by the facts set forth in the next paragraph. Nevertheless, the evidence also refutes the contention that appellant was "mentally unable to intend anything." He took a loaded shotgun from his friend's house, followed his friend over a fence to confront an adversary, pointed the gun, was rebuffed, pointed the gun again, heard someone yell "fuck that nigger [meaning the victim]," and fired into the victim's neck. This sequence of events tends to show purpose and discredits any suggestion that appellant was not consciously aware of the events. As such, the trial court did not commit plain error by failing to sua sponte instruct the jury about intoxication.
Under this assignment of error, we shall also address the first part of appellant's sixth assignment of error which alleges that appellant's trial counsel rendered ineffective assistance by failing to request an intoxication instruction after hearing testimony about appellant's intoxication. A police officer testified that he saw appellant at 5:00 p.m., two hours before the shooting. He described appellant as "kind of buzzed, kind of high, slow, disoriented, eyes glassy, smelled like he had been drinking." (Tr. 922). Appellant points to the testimony of five witnesses from the party who saw him "staggering" and "stumbling" around with the shotgun and pointing it at a friend whom he did not recognize. One witness stated that appellant was impaired and specifically described him as being "fucked up, pretty high, pretty out of it." (Tr. 978). Many witnesses stated that appellant smoked marijuana that day. Some of them saw appellant drinking. Dale Jackson and Mr. Edwards said that appellant took valium that day, possibly more than ten total; however, some of the pills were consumed in the morning. All of this information came out on direct examination by the state.
Appellant's attorney did not dwell on or attempt to present an intoxication defense. The defense posited at trial was predicated upon the theory that appellant was not the shooter but someone else was. In fact, appellant's counsel asked Dale Jackson the following questions: "After he pulled his hand out of his pocket, you shot him, isn't that right?" and "After you shot him, you dropped the gun right there didn't you?" (Tr. 897). The defense also presented the testimony of a neighbor who said that after she exited Mr. Williams' house from the front, she noticed appellant, her nephew by marriage, standing at the end of the driveway. She then heard the gun shot. Her testimony implies that appellant was not in the back of the apartment building when the shot was fired as Dale Jackson claims.
To establish a claim of ineffective assistance of counsel, appellant must show that his counsel's performance was deficient and that such deficient performance prejudiced his defense. Statev. Reynolds (1998), 80 Ohio St.3d 670, 674, citing Strickland v.Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. Id. The defendant must show that counsel acted unreasonably by substantially violating an essential duty that an attorney owes to a client. State v. Sallie (1998), 81 Ohio St.3d 673,674; State v. Keith (1997), 79 Ohio St.3d 514, 534. Because attorneys are presumed competent, reviewing courts refrain from second-guessing strategical decisions and strongly presume that the performance in question falls within a wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545,558.
Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, supra at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that were it not for serious errors made, the outcome of the trial would have been different. Strickland, supra at 695-96. A reasonable probability is one which serves to undermine confidence in the trial's outcome. Id. See, also, State v. Bellish (Mar. 31, 1998), Mahoning App. No. 87-CA-78, unreported, 4.
The decisions to discredit and incriminate the eyewitness and to present an alibi-like defense, instead of claiming that appellant was too drunk to have shot Mr. Moses on purpose, are decisions based upon tactical considerations and do not constitute deficient performance. When a defendant claims voluntary intoxication, that defendant is basically saying to the jury, "I killed the victim, but do not hold me responsible for I was very drunk and drugged up and did not intend to take my friend's shotgun, climb over a fence with it, approach the victim, and shoot him in the side of the neck while he argued with my friend about drugs." It is entirely possible that appellant and his attorney discussed and then decided against such an approach. It was within reasonable trial strategy to blame someone who had more of a motive to kill the victim. It would have been inconsistent to present the defense that he did not shoot the victim contemporaneous with the defense that he did shoot the victim but was too intoxicated to intend to shoot.
Moreover, even if appellant's counsel had requested an intoxication instruction, there is no guarantee that the request would have been granted. It is within the trial court's sound discretion to decide whether an instruction is warranted. Wolons,supra at 68. As aforementioned, appellant may have been intoxicated but it does not appear that appellant was "mentally unable to intend anything." Thus, our confidence in the outcome is not undermined. Accordingly, this argument is overruled.
 V. ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error contends:
 "THE ADMISSION OF IRRELEVANT AND PREJUDICIAL `OTHER ACTS' TESTIMONY WAS IN CONTRAVENTION OF EVID.R. 403 AND 404 AND OHIO R.C. § 2954.59 AND DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION."
Pursuant to Evid.R. 404 (B), evidence of other crimes, wrongs, or acts is not admissible to show that a person acted in conformity with their character. However, evidence of other crimes, wrongs, or acts may be admissible to show motive, opportunity, intent, identity, preparation, plan, knowledge, or absence of mistake or accident. Id. See, also, R.C. 2945.59.
Appellant complains that certain events mentioned in the prosecution's opening statement and presented in portions of the testimony constitute inadmissible other acts evidence. Appellant also complains that his attorney rendered ineffective assistance of counsel by failing to object to much of this evidence.
The prosecution's opening statement contained the following account:
 "The story actually starts on Sunday, February the 19th, 1995. On that particular day John Edwards, JJ, obtains a shotgun that killed Ron Moses, Jr., a shotgun with the trunk of the gun cut off. * * *.
 It was also on the 19th of February, 1995, that JJ lost a firearm, a .45 caliber handgun; that he blamed Michael Amill, his buddy, for taking. * * * JJ accuses Mike of being a thief. * * *
 * * * However, the morning of the 20th of February, JJ's still kind of hot about the loss of a .45 caliber handgun. It's about $400, and he's out of pocket that kind of money because he's got to go buy another one now. So early Monday morning, February 20th, 1995, JJ and Dale Jackson get in JJ's light blue van and drive over to the east side of Youngstown to rob a drug dealer. That don't happen. The drug dealers run away; no robbery's committed that morning.
* * *
 You're going to hear that early in the afternoon of that Monday * * * while the group is riding around in this light blue van around the City of Youngstown, armed, shotgun in the van, other guns in the van, Michael Amill points out these other guys that had robbed him of his bike at an earlier time and how he urges JJ as revenge to shoot them, take them on. And you're going to hear about how a near shootout that particular afternoon was averted by Damico Jackson who knows the guys, gets out of the van, and pretty much stops things before the shooting occurs at that time. But Damico, quite rightfully so, is awful pissed at Mike for getting him in that situation * * *.
 The second incident that afternoon involves a robbery of a marijuana dealer at Cleveland Elementary School set up by Michael Amill for his friends. A shotgun was flashed, the dealer gave up the dope. It's becoming an exciting day for Michael Amill and his friends.
 A third incident you're going to hear about that afternoon involves some of these east side guys coming over to the south side to get — that are getting a little to close to where Michael Amill and his friends live. So Michael Amill and his friends once again get inside that light blue van and chase these individuals down into Mill Creek Park, and JJ points the shotgun out the window and shoots at these guys but doesn't hit them." (Tr. 210-214).
We first note that the incident described in the third paragraph about a robbery did not involve appellant. The mention of this incident actually served to detract from the character of the state's two main witnesses: John Edwards and eyewitness Dale Jackson. Thus, the revelation of this event to the jury without objection by defense counsel did not prejudice appellant's defense.
As for the incident alluded to in the fifth paragraph about appellant setting up the robbery of a drug dealer for his friends, an objection should have been made. However, because the state did not elicit testimony during trial regarding this incident, it was unlikely to have made an impression upon the jury. Hence, we fail to see how the defense was prejudiced.
We will now discuss the state's attempts to elicit testimony about certain incidents outlined in its opening statement. On one occasion, the state asked Mr. Edwards whom he thought stole his gun. In response, defense counsel successfully objected. The state argued that it needed to present a chain of events to prove motive and intent. The court disagreed and instructed the state to avoid questions about events that did not concern the victim. (Tr. 434). Nevertheless, when the state asked Mr. Edwards why he initially refused to tell police who shot Mr. Moses but later implicated appellant, Mr. Edwards stated that he had problems with appellant that whole weekend. Before the court could sustain defense counsel's objection, Mr. Edwards answered, "He stole my gun." (Tr. 473). This answer was not stricken from the record. Another witness stated that appellant was invited to the party because they wanted to "see why he took — stole JJ's gun that day." (Tr. 582). Defense counsel's objection was sustained, but again the answer was not stricken from the record. Then Damico Jackson testified, "It was a thing of trying to figure out whether or not Mikey had stole JJ's gun, and JJ had figured out that Mike had stole this gun. JJ wanted the gun back, and Mikey was denying that he took it." (Tr. 657). This time no objection was offered.
It is apparent from the record that defense counsel objected repeatedly. Notwithstanding the successful objections, the witnesses were somehow still able to slide in statements about appellant's alleged role in the loss of Mr. Edwards' handgun. Although motioning to strike the witnesses' testimony would have been appropriate, we cannot say that the failure to do so was a serious error that affected the outcome of appellant's case. Revealing that appellant's criminal friends thought that he may have stolen a handgun from one of them does not so taint the case that our confidence in the outcome is undermined.
Moreover, the Supreme Court has held that even if the jury heard inadmissible other acts evidence, the error is harmless if there is other admissible evidence which demonstrates overwhelming proof of guilt. State v. Hutton (1990), 53 Ohio St.3d 36,41. In this case, Dale Jackson testified that he was right in front of the victim when he was shot by appellant. This case revolved around credibility: credibility of eyewitness Dale Jackson, credibility of those who claim that they saw appellant leave with the gun or return with the gun, and credibility of those who claim that appellant acknowledged that he killed Mr. Moses. Even though the jury knew that Dale Jackson had more of a motive to be upset at the victim and even though the jury knew that Dale Jackson was a robber and a drug-dealer who had recently been incarcerated, they still believed his testimony. The jury did not believe the defense's suggestion that all of the partygoers conspired to frame appellant for a murder committed by Dale Jackson. Leaving these credibility determinations for the jury, we must hold that there existed overwhelming evidence of appellant's guilt regardless of the inadmissible other acts testimony about appellant's alleged theft of a handgun that slid into the case.
Next, appellant complains that the following testimony of Mr. Edwards revealed inadmissible other acts:
 "We was riding up Breaden, and there was these guys they claim are Bloods and they * * * was standing on the corner, and Mikey knew if he would say something to me that I'd say something about it because these guys stole his bike before and pulled a gun out on him. * * * So I stopped my van, and Damico was, no, man, you're about to get us all killed. He was like, Mikey, I should punch you in the face for even telling me. I rolled down the window and called the cat, over, and Damico jumped out the van and went over there and talked to him and made them leave * * * I was about to shoot them." (Tr. 516-519).
Before Mr. Edwards recited this story, defense counsel had unsuccessfully objected. After another objection by defense counsel was overruled, Damico Jackson testified to a similar story complaining that he was mad at appellant because once Mr. Edwards is upset, it is hard to calm him down. He blames appellant for putting his life in danger by disclosing to Mr. Edwards that the gang had stolen his bike.
Contrary to the state's argument, we fail to see how this event is admissible to prove motive or intent to kill Mr. Moses. Appellant correctly asserts that this is inadmissible other acts testimony. Nonetheless, the admission of such testimony did not prejudice appellant's defense. The objectionable testimony only served to make Mr. Edwards look bad. It also put Damico Jackson in a bad light, in that he blamed appellant for Mr. Edwards' lack of control. The prosecutor's characterization of appellant's role here as "urging" or "egging on" may have been an exaggeration but was not objected to and was not highly prejudicial.
Lastly, appellant alleges that the testimony concerning shotgun blasts in the park was inadmissible. This incident, which occurred about two hours before the murder, entailed appellant and his friends following some people into Mill Creek Park where Mr. Edwards shot at them with his shotgun. Initially, we note that it was defense counsel who raised the park shooting incident in opening and in cross-examination of Mr. Edwards. In fact, the admission of this event only harms the character of Mr. Edwards, who once again looks like he attempted to commit murder.
Furthermore, the testimony was admissible to prove that appellant knew that the shotgun was operable which goes toward the element of intent. See Evid.R. 404 (B). It was also admissible to establish why police officers were at the Jacksons' house on the day of the murder. The testimony of one of these officers placed appellant near the crime scene two hours before the shooting wearing clothes different than those handed over to police the day after the murder. Thus, the admission of this testimony was not reversible error.
For the foregoing reasons, this assignment of error is overruled.
 VI. ASSIGNMENT OF ERROR NUMBER FIVE
Appellant's fifth assignment of error alleges:
 "APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHERE THE PROSECUTION ENGAGED IN PROSECUTORIAL MISCONDUCT DURING THE TRIAL AND BY IMPROPER COMMENT DURING ARGUMENT."
First appellant complains that, in closing arguments, the prosecutor improperly stated:
 "I stand behind Detective McKnight in his investigation. He does the first part of the case; he prepares a suspect. We work in tandem. That's my roll. [sic] If I feel that McKnight did something that I couldn't prove my case beyond a reasonable doubt, I would let him know. I would send him back out. He's not the only one involved in the prosecution of this case." (Tr. 1347).
Appellant alleges that the foregoing paragraph constitutes prosecutorial misconduct because it contains the prosecutor's personal opinion about the adequacy of the police investigation. He also argues, by way of his sixth assignment of error, that his attorney's failure to object to said paragraph constitutes ineffective assistance of counsel. The test concerning prosecutorial misconduct in closing arguments is whether the remarks were improper and if so whether they prejudicially affected the defendant's substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14. The entire closing argument must be reviewed in order to determine whether the objected to remarks were prejudicial. State v. Loza (1994), 71 Ohio St.3d 61, 78.
The remarks to which appellant objects were made in the state's rebuttal to the defense's closing argument which continually criticized the adequacy of Detective McKnight's police investigation. (Tr. 1338-1343). "Where the reference to matters outside the record is short, oblique and justified as a reply to the defense arguments and elicits no contemporaneous objection, there is no prejudicial error." State v. Lott (1990), 51 Ohio St.3d 160,166. Since the prosecutor's short comment was directed at the defense's allegations of ineffective police investigation, the prosecutor's comment does not amount to prejudicial error. Next, appellant alleges prosecutorial misconduct due to the state's presentation of other acts evidence at trial and the reference to it in opening statements. However, there is nothing improper about the state's initial attempt to present other acts evidence where it believed that the evidence was admissible to prove motive, opportunity, and intent. Appellant also complains about the following portion of the prosecutor's closing argument which refers to the incident with the gang members who stole appellant's bike:
 "* * * JJ Edwards was going to retaliate on behalf on Mike Amill. You recall that testimony. Mike Amill is egging John Edwards on. And you can see how easily John Edwards can get egged on during the questioning of [M]iss Kobly [appellant's attorney]." (Tr. 1318).
Because the court allowed testimony about this event to come in at trial, there can be no prosecutorial misconduct with regards to the state's recap of the admitted evidence. Moreover, we refer appellant to our analysis under his fourth assignment of error dealing with the introduction of this other acts evidence. In accordance, this assignment of error is overruled.
Appellant filed a supplement to his brief which he asks to be added to this assignment of error. He claims that the prosecutor misled the jury by showing them a picture of Dale Jackson's face with what was alleged to be marks from the debris that flew at him from the shotgun blast. At request of the police, Lynell Lockhart searched the carpet in his house and collected what he thought may have been the debris that Jamal Gilmore picked out of Dale's face. However, the debris was tested by the crime lab and it turned out to be cinder not buckshot. (Tr. 952). Appellant states that since the prosecutor knew that the residue was not gunshot residue, it should not have encouraged the jury to assume that the marks on Dale Jackson's face were created when he was allegedly hit with debris from the shotgun blast.
We must point out that merely because the debris that Mr. Lockhart picked out of his carpet was not gunshot residue, does not mean that the prosecutor knowingly presented false evidence by showing pictures of Dale and alleging that the marks on Dale's face were the result of debris from the shotgun blast. It is possible that Mr. Lockhart was simply unable to locate the actual particles that were picked from Dale's face. It is also possible that there was debris at the opening of the shotgun barrel, which was said to have been leaning against the fireplace wall at one point in the night. (Tr. 976). This may explain the lab finding of cinder which is burned wood or coal. (Tr. 952-953). Either way, it was not improper for the prosecution to bolster its theory that appellant and not Dale was the shooter by following Dale's story that he was hit by debris from the shotgun blast.
 VII. ASSIGNMENT OF ERROR NUMBER SIX
Appellant's sixth assignment of error provides:
 "APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."
Appellant divides this assignment into three parts. In the first part, he complains about his attorney's failure to request a jury instruction on intoxication. We disposed of this argument under appellant's first assignment of error. Appellant's second claim of ineffective assistance deals with his counsel's handling of the other acts evidence. We analyzed this claim under appellant's fourth assignment of error. Lastly, appellant alleges ineffective assistance because his counsel did not object to the prosecutor's comment about the police investigation. However, we overruled this allegation under appellant's fifth assignment of error. As such, this assignment of error has been fully addressed within other assignments of error.
 VIII. ASSIGNMENT OF ERROR NUMBER SEVEN
Appellant seventh and final assignment of error provides:
 "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Weight of the evidence concerns the effect of the evidence in inducing belief. State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In order to reverse a verdict as being against the manifest weight of the evidence, a reviewing court must determine that the jury clearly lost its way and created a manifest miscarriage of justice. Id. A verdict is reversed on these grounds only in exceptional circumstances. Id. This is because credibility of witnesses and weight of the evidence are primarily questions for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,231.
After reviewing the entire record, we refuse to sit as the "thirteenth juror" who claims that the jury clearly lost its way when it chose to believe the testimony of eyewitness Dale Jackson who stated that he was standing right next to Mr. Moses when appellant shot him. Dale Jackson also claimed that the side of his face was struck by some of the debris from the shotgun blast. He stated that Jamal Gilmore picked the gray specs out of his face. Dale and a police officer both testified that, on the day of the murder, appellant was wearing clothes that varied from the clothes handed over to police for testing by appellant's father. Paul Lucky testified that after the blast, appellant entered the Jacksons' house with the shotgun in his hands. Mr. Lockhart and Mr. Floyd both heard appellant admit to shooting the victim. The jury's verdict finding appellant guilty of murder was not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P.J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________ JOSEPH J. VUKOVICH, JUDGE